SALVATORA NUZZI AND VINCENZO NUZZI, HER HUSBAND, AND VINCENZO NUZZI, IN HIS OWN RIGHT, PLAINTIFFS-RESPONDENTS, v. UNITED STATES CASUALTY COMPANY, A CORPORATON OF THE STATE OF NEW YORK, DEFENDANT-APPELLANT.

FRANCESCO PIARULLI, PLAINTIFF-RESPONDENT, v. UNITED STATES CASUALTY COMPANY, A CORPORATION OF THE STATE OF NEW YORK, DEFENDANT-APPELLANT.

Argued May 19, 1938—Decided October 17, 1938.

For the plaintiffs-respondents, Salvatora Nuzzi and Vincenzo Nuzzi, *Samuel P. Orlando.*

For the plaintiff-respondent, Francesco Piarulli, *Albert S. Woodruff.*

For the defendant-appellant, *Walter S. Keown, George D. Rothermel* and *Merritt Lane.*

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. These are appeals from two summary judgments entered in the Supreme Court. Judge Palmer heard the case without a jury and his disposition of the defenses in each case amounted to a striking out of the answer and the separate defenses. Judgments were entered against the defendant insurance company for reduced amounts within the coverage of the insurance contract. A review of the facts is essential.

The plaintiffs recovered judgments in the Camden County Common Pleas Court on October 23d, 1935, against the Diamond Fuel Company and its driver, Albert Mosely, for the

following sums: Salvatora Nuzzi, $16,780; Vincenzo Nuzzi, her husband, $17,434, and Francesco Piarulli, $1,595. These judgments arose out of personal injuries suffered by the Nuzzis and personal injury and property damage by Piarulli. Mr. and Mrs. Nuzzi were passengers in Piarulli's car when it collided with an automobile truck of the Diamond Fuel Company. The accident happened on September 28th, 1934, and on that day the truck of Diamond Fuel Company had been included within the coverage of a policy of insurance by a rider issued by one Alex. M. Malamut. The insurer, United States Casualty Company, saw fit to disclaim liability on the contract of insurance and refused to defend the assured or the driver in the law action. Pending the trial of the negligence action in the Pleas, the United States Casualty Company filed a bill in the Court of Chancery seeking an annulment of the policy on the ground that the rider which was issued on September 28th, 1934, the date of the accident, and which included the automobile truck involved in the accident, was procured by fraud, in that Malamut, a subagent of the insurance company, and who was at the same time the president (although inactive) of the Diamond Fuel Company, had the rider issued *after* he learned that the accident had happened. This proceeding in Chancery, to cancel the policy, resulted in a decree, dated January 11th, 1937, dismissing the bill of complaint. Vice-Chancellor Davis, who heard the case, held that the alleged fraud was not proved. The decree was affirmed by this court (*United States Casualty Co.* v. *Diamond Fuel Co.,* 122 *N. J. Eq.* 369). The plaintiffs, holders of the judgments, unable to have same satisfied by the assured, brought suit thereon in the Supreme Court against the insurer, the defendant in this cause.

The complaints allege the entry of the judgments mentioned, the return of execution against the *tort feasors* unsatisfied, and that the defendant's contract of insurance was valid and in full force and effect.

The answer of the insurance company consisted of a general denial of liability; in addition, four separate defenses were

pleaded—(1) that Malamut had no authority to issue a valid policy, rider or endorsement binding upon the defendant; (2) that the insurance policy was invalid because it carried the endorsement of Malamut, who was at the time president of the assured, Diamond Fuel Company, which affiliation was altogether unknown to the insurance company until after the loss.

The third separate defense—failure to co-operate in the trial of the original suit in the Common Pleas—was abandoned, and the fourth—that the insurance company tendered the return of the premium paid for the insurance to the Diamond Fuel Company—was not argued and is considered as abandoned.

A special defense to the second and fourth counts of the complaint was interposed, viz., that the defendant's limit of liability as contained in the said policy is stated to be the sum of $10,000 for the injury or death of one person and $20,000 for the injury or death of more than one person arising out of a single accident; that the judgment for Mrs. Nuzzi exceeds the limit of liability as stated in the policy, to wit, $10,000; and that the claim of Vincenzo Nuzzi, in the sum of $17,434.20, includes damages not only for his bodily injuries, loss of earnings and personal incidental expenses, but also included the hospital and medical expenses of his wife, Salvatora, and loss of services and loss of consortium visited on him by reason of his wife's injuries. In fine, it is the claim of the appellant that its contract makes it answerable for bodily injuries and nothing more.

The reply alleges that the issues touching the validity of the policy of insurance were adjudicated in the Court of Chancery; and that the policy undertook to protect the insured from damage resulting from *personal* injuries as distinguished from *bodily* injuries up to $10,000 in the case of injury or death to one person and $20,000 where in one accident more than one person were injured or killed.

In Piarulli's action the pleadings were substantially the same except that a fifth separate defense set up by the casualty

company asserted that this plaintiff cannot have satisfaction of his judgment under the policy because the lump sum judgment recovered by him represents damages for his injuries and property damage to his automobile as well and that the respective sums for each should have been found as separate items by the jury. Counsel, however, stipulated that the only evidence as to property damage offered in the Piarulli case on the trial of the same was for the sum of $1,065. The total judgment for this plaintiff was $1,595 and the court concluded that the jury had accepted the property damage figure and that the balance of the judgment represented the award for personal injuries. If this theory be correct, then the property damage would be within the $5,000 limit for property damage mentioned in the policy and the holder of the judgment would have to look to the maximum limit of $20,000 out of which to satisfy his claim for injuries.

The learned trial judge, to whom the parties submitted the legal questions raised by the pleadings before the trial of this cause, determined that the plea of *res judicata* was valid and effectual as to the first and second separate defenses, *i. e.,* lack of authority in Malamut to countersign the endorsement and invalidity of contract of insurance because of the fact that Malamut, when he countersigned the endorsement, was an officer and director of the assured company; and that the first special defense to the second and fourth counts, which brought into issue the extent of the protection afforded by the policy, was not a good defense. This special defense, as mentioned above, sets out with particularity that the judgment for the husband, Vincenzo, included damages for his bodily injuries and also other items of injury and damage, *e. g.,* loss of wages and hospital expenses, as well as loss of his wife's services and consortium, &c., and that such judgment cannot stand because the items making up the total sum have not been, and now are incapable of being separated, and that therefore no recovery whatever can be had on this judgment.

The trial court overruled this special defense, holding that while the policy, under the "General Agreement" speaks of

"bodily injuries," the succeeding paragraph of the contract, headed "Personal Injury," (paragraph 1) insures the assured against loss from liability imposed by law on account of such injuries or death. In this determination the court below was clearly right. The term "personal injury" is broader and more comprehensive than the term "bodily injury," and a covenant to protect the assured "against loss from the liability imposed by law upon the assured" comprehends a broader field than that mentioned under the "general agreement," viz., bodily injuries. For instance, a husband, from the earliest times at common law, was entitled to recover for any wrongful act *per quod consortium amisit.* 3 *Bl. Com.* 140. This loss is a personal injury. See, also, *American Motorists, Inc.,* v. *Kopka (Sup. Court of N. H.),* 186 *Atl. Rep.* 335; *Baker et al.* v. *Aetna Life Insurance Company of Hartford,* 265 *N. Y. S.* 231; *Floyd* v. *Consolidated, &c.,* 237 *App. Div.* (*N. Y.*) 190. In any event, where, as here, the several provisions of the insurance contract as to liability for damages are inconsistent and therefore ambiguous, courts will adopt a construction, permitted by the terms of the agreement, against the insurer. *Harris* v. *American Casualty Co.,* 83 *N. J. L.* 641; *Weiss* v. *Union Indemnity Insurance Co.,* 107 *Id.* 348; *Jasion* v. *Preferred Accident Insurance Co.,* 113 *Id.* 108.

The several claims of the individuals for bodily and personal injuries were reduced *pro tanto* so as to bring the total of all claims for injuries, as reduced, within the maximum coverage of $20,000. Piarulli had judgment for the full amount claimed as property damage (limited to $5,000 by the contract), namely, $1,065. Additions of interest and costs were added to the judgments.

The main question in this case is whether or not the decree of the Court of Chancery was *res judicata* and concluded the issues here raised as to the validity of the contract of insurance. The court below held that the issues in the case in Chancery, and the case presently under discussion, were identical. This judgment of the Supreme Court, we think, was

correct. Such part of the record of the proceedings in the Court of Chancery, as appears in the state of case before us, makes this quite apparent. It is true that the affiliation of Malamut with the assured company is not specifically charged in the bill of Chancery as a point of attack in the suit to annul the insurance contract, but it is alleged that he was the president of the assured company and the record is clear that proof was offered to show that he was, in fact, such president.

The learned vice-chancellor, in his conclusions disposing of the case in Chancery, said: "Alex. M. Malamut was duly appointed agent of the complainant for the transaction of business in the State of New Jersey as appears by a certificate filed in the office of the commissioner of banking and insurance of New Jersey, signed by Mr. Moorhead, vice-president and secretary of complainant, his place of business being stated in said certificate to be Broadway-Stevens Building, Camden, New Jersey. At the time of the issuance of this policy and the endorsement in question, Mr. Malamut was also the president of the defendant Diamond Fuel Company, although it appeared he had no substantial financial interest in the business of the company and took no active part in its management. * * *"

*"Some question was raised by the complainant with reference to the authority of Malamut, as agent, to countersign the endorsement as the authorized representative of complainant, it being suggested that because of the fact that he was president of the Diamond Fuel Company it was improper to do this; it was also suggested that his authority as an agent of the complainant, working through the Camden Casualty Company did not give him such authority as would allow him to bind the complainant.* [Italics ours.] However, as I have already said, all the policies and endorsements were made up in complainant's office and when signed by an authorized representative, an agent such as Malamut, have been recognized as binding upon the complainant. The nature of the insurance business is such that much of it is transacted by tele-

phone, and the testimony of Mr. Malamut is that he had obtained a great many policies for the complainant, seventy-five or more, all of which he signed as agent, and it seems doubtful that the complainant would not know of the practice of his signing as authorized representative so that any objection raised on that score to the validity of the policy or the endorsement is not, in my opinion sound."

Our memorandum in this court, *supra,* in support of an affirmance of the decree mentions Malamut in his capacity as president of the assured. Appellant argues that the question of the validity of the policy and the endorsements was not raised or decided in the Court of Chancery and that the "vice-chancellor was mistaken, if he meant, by this language, to intimate that complainant, defendant here, had asked the Court of Chancery for any relief upon the grounds he states. The fact that Malamut, who negotiated for and countersigned both the policy and the endorsement, was the president, director and stockholder of the insured was injected in the Chancery suit solely for the purpose of showing the close relationship between the insured and Malamut as an element in the determination of the question as to whether Malamut had committed the active fraud charged in the supplemental bill of complaint."

Supplementing this statement, the appellant-insurer argues that the defenses interposed in the law action were not submitted to the Court of Chancery and could not have been since they were purely legal in character; further, that the suit in Chancery sought a cancellation of the contract while the defenses at law sought a determination that the contract was neither valid nor binding on the company but was void from the beginning. In a word, the argument is that appellant claimed in Chancery that the contract was void for the active fraud mentioned while at law the contract is said to be void for lack of authority in the agent (who is the same person charged with the active fraud) to countersign and because of his interest in the assured. We observe, parenthetically, that the bill of complaint filed in the Court of Chancery

(paragraph 4) alleged that the company's agents were without authority to countersign a policy insuring against a casualty that already had occurred. This allegation can only mean that the policy of insurance was void because issued without authority, or in excess of the authority granted. We further observe that the lack of authority in the agent sought now to be raised as a defense at law was tacitly comprised in the fraud urged in the Court of Chancery (viz., that the policy-rider was endorsed and issued after the happening of the accident) because the act of the agent in countersigning the policy was a material overt act in the alleged conspiracy to commit the fraud. If the policy was not countersigned there would be no need to try to annul it in Chancery since it would be void on its face for want of countersigning. The act of the agent in so doing was a prerequisite to the issuance of a policy fair on its face. It follows that his act and his authority must perforce have been an element in the Chancery cause even though not raised directly in the bill of complaint.

The contention raised by the second separate defense likewise was logically bound up in the fraud asserted by the appellant. It was, and under the circumstances of the case, of necessity had to be, a material element in the fraud charged by the appellant whether Malamut, its agent, acted for the benefit of his principal, the insurance company, or for the benefit of the assured, of which he was the president.

Now in the Court of Chancery, the bill of complaint alleged that the appellant had no adequate remedy at law and that it sought the aid of the Court of Chancery to avoid a multiplicity of suits. Its ground for relief being based on fraud, it follows that every element comprehended by the fraud charged was disposed of and concluded by the court's decree as well as every element under the facts and circumstances that was necessarily linked with the fraud alleged. The countersigning by Malamut as an individual and his status of affiliation with the assured necessarily were involved because, as stated above, without his signature, the policy, by its terms, was ineffectual. If these defenses were not

urged as points of attack by the appellant in the Court of Chancery with an acuity displayed in the separate defenses at law they should have been since they were, under the circumstances, elements tending to prove the fraud alleged. Certainly proof on these points would have been material and relevant to the appellant's case and, since they were, they cannot now be pleaded but are concluded to this appellant. Nor do we think it open to serious question but that Vice-Chancellor Davis had these points, now pleaded as legal defenses, in mind when he determined this case. His conclusions are part of the record before us. Now, while the conclusions may not be part of the Chancery record, strictly, nevertheless the parties below submitted them to the trial court, who necessarily considered them, and we must take them at their face value. The entire Chancery record is not before us—merely extracts from it.

It cannot be gainsaid that the vice-chancellor, from the extract of his opinion quoted above, found against the appellant on these two points—(a) want of agency in Malamut, and (b) fraud because of Malamut's connection with the assured. If this were not so, the passage quoted above from his opinion would be meaningless.

Further, it is argued that the action in the Court of Chancery sought the cancellation of the endorsement of Malamut while the defenses at law had for their objective a judgment that the contract had no legal efficacy, i. e., that a binding contract never came into being. But this latter relief or remedy is precisely the same as that sought in the former suit. The remedy sought in Chancery went to the inception of the contract, and if the outcome had been successful for the insurer the decree would have provided that the writing between the parties was not a contract and the rights of the parties as they were prior to the filing of the bill would have been preserved. The "fundamental theory upon which equity acts is that of restoration—of restoring the defrauded party primarily, and the fraudulent party as a necessary incident, to the positions which they occupied before the fraud was

committed. Assuming that the transaction ought not to have taken place, the court proceeds as though it had not taken place and returns the parties to the situation." *Pom. Eq. Jur.* (*4th ed.*) § 910; *Cornish* v. *Bryan,* 10 *N. J. Eq.* 146, 151; *Monmouth Fire Insurance Co.* v. *Hutchinson et al.,* 21 *Id.* 107, 117. It follows that the position of the appellant-insurer in the Court of Chancery, and now in the law court, is that there never was a valid contract of insurance and for the same reason, viz., that Malamut had undertaken to bind the appellant in the case of the Diamond Fuel Company, where he not only had no jurisdiction but knew at the time that the accident had happened. The issues attempted to be raised at law were plainly within the issue litigated in the Court of Chancery and therefore the matter is *res judicata.*

The situation before us is within the long settled legal principle that where the relief sought to be obtained (*i. e.,* by the defenses at law) in the second suit rested upon the same basis in essence and substance as that which was litigated in the first suit, "the parties are concluded not only as to every matter which was offered and received to sustain or defeat the claim or demand but as to every other admissible matter which might have been offered for that purpose." *City of Paterson* v. *Baker,* 51 *N. J. Eq.* 57; *In re Walsh's Estate,* 80 *Id.* 565; *Cromwell* v. *Sac. Co.,* 94 *U. S.* 351.

Again, in the Chancery action the matters called to the fore in the bill of complaint were, strictly speaking, matters of defense which would have been available to the complainant (insurer) if it was sued on its policy. It is true that the fraud alleged could not be charged against Mr. and Mrs. Nuzzi and Piarulli, but nevertheless if the situation were turned about and the Diamond Fuel Company had paid the judgments found in the Common Pleas Court, and had then sued on the policy, the appellant-insurer could have interposed the defense of fraud against the assured. If such a turn of events had occurred no one would contend that the appellant could have raised the defense of lack of authority in the law court and, if defeated on that score, later resort to

the Court of Chancery in a second suit, the object of which would be to enjoin execution and to cancel or annul the contract. It is clear that the purpose of the action in Chancery was to anticipate and prevent a suit on the contract by the injured people who could not be charged with the alleged fraud of Malamut, and that the matters relied upon in the equity suit were really defenses to the contract, and it is elementary that a defendant is bound to set up every defense that he possesses in the one suit. Parties are never permitted to split up their causes of action or their defenses and attempt to hold the reserve for the purpose of attack or defense in future litigation. *Rosenstein* v. *Burr,* 80 *N. J. Eq.* 424; *Hoboken Mfg. Railroad Co.* v. *Hoboken,* 76 *N. J. L.* 122.

Finally, it was the duty of the appellant, when it filed its bill, to advance every pertinent reason within its knowledge to bring about the annulment of the contract or to have it declared invalid. At that time it knew all that it now seeks to interpose. No new matter arose since the filing of the bill. It sought refuge in Chancery, as it said, to avoid a multiplicity of suits and because it had no adequate remedy at law, yet it reserved questions for other and further litigation in order to vex judgment creditors. In seeking to avoid a multiplicity of suits, its position now is that there should be reserved a multiplicity of suits for others. The legal maxim, "it concerns the commonwealth that there be a limit to litigation" applies to the situation before us in all its fullness.

Now as to the Piarulli judgment, it will be remembered that the appellant argues that because the item of property damage was not found separately from the sum allowed for bodily injury damage, such failure of segregation is fatal to the judgment. There is no merit to this point. The appellant should not be heard at this late date to complain of a result that arose out of its own breach of contract. The contract of insurance was binding and valid. It was the duty of the insurer, under the terms of the contract, to defend the action. If it had defended the action, it would have had control of the conduct of the defense and would or should have requested

specific findings by the jury. *Smith* v. *Phoenix Indemnity Co.,* 119 *N. J. L.* 522.

The last point made by the appellant is, that the Financial Responsibility act or coverage thereunder has no application to the case before us. As to this some question arose in the case concerning a previous unsatisfied judgment having been recovered against Mosely, the driver of the Diamond Fuel Company truck, which arose out of a motor vehicle accident. Since the policy in question has been found to be a valid contract, a discussion and determination of this point is not necessary.

The judgments under review are affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 15.

*For reversal*—None.