246 N.J. Super. 564 (1991)
588 A.2d 417
EILEEN VOORHEES, PLAINTIFF-APPELLANT,
v.
PREFERRED MUTUAL INSURANCE CO., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 15, 1991.
Decided March 20, 1991.
*566 Before Judges PRESSLER, DEIGHAN and BAIME.
Francis X. Garrity argued the cause for appellant (Garrity, Fitzpatrick, Graham, Hawkins & Favetta, attorneys; Francis X. Garrity of counsel; Rudolph G. Morabito on the brief).
*567 Anthony P. Pasquarelli argued the cause for respondent (Methfessel & Werbel, attorneys; Anthony Pasquarelli on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This appeal presents novel questions concerning an insurer's duty to defend its insured. The principal issue is whether a complaint alleging that the insured committed the torts of outrage and negligent infliction of emotional distress resulting in mental anguish to the claimant creates a duty to defend under the comprehensive general liability coverage of a homeowner's insurance policy. An ancillary question is how the insurer's duty to defend can best be enforced where an action against the insured includes covered and non-covered claims. We hold that the term "bodily injury," as used in the policy, encompasses the mental and psychological sequelae resulting from the torts of outrage and negligent infliction of emotional distress and therefore the insurer had the duty to defend. We also conclude that because the expenses incurred by the insured cannot fairly be apportioned between covered and non-covered claims, the insurer alone should bear the reasonable costs of the defense.

I.
In December 1985, Linda Sisto, a teacher in the Kenilworth public schools, filed a complaint in the Law Division, naming as defendants the superintendent, the principal, the board of education, two local newspapers, plaintiff Eileen Voorhees and another parent of a student. The complaint alleged that Sisto had been suspended from her teaching duties and directed to undergo psychiatric examinations as a result of the claims of several parents concerning her alleged lack of fitness. Sisto claimed that the school officials had acted unfairly and that she had been defamed by reports of the episode in the newspapers.
*568 The fourth count of the complaint was directed against Voorhees and the other parent. Because the complaint was inartfully drafted, it is difficult to characterize accurately the specific claims made against the two defendants. The issue is an important one and we therefore quote liberally from the fourth count:
At various times and on various dates relevant to this complaint, defendants Constance Scuderi and Eileen Voorhees made false and erroneous statements about the competency and fitness of the plaintiff, such statements serving to place plaintiff before the public in a false light, further serving to interfere with her rights of privacy and to inflict upon her severe humiliation, embarrassment, emotional distress and mental anguish. The statements as well as conduct of these defendants respecting the plaintiff herein were made and carried out wilfully, deliberately, recklessly and negligently. Moreover, these defendants knew or should have known that their statements about plaintiff were false and would probably, as occurred, place plaintiff before the public in a false light, interfere with her rights of privacy, cause her severe humiliation, embarrassment, emotional distress and mental anguish.
As a direct and proximate result of the foregoing, plaintiff was damaged in her reputation as a professional teacher and has been unable and remains unable to function in her customary teaching assignment. Moreover, she has been placed before the public in a false light, has had her rights of privacy interfered with and has suffered and continues to suffer embarrassment, humiliation, emotional distress and mental anguish. [Emphasis added].
Upon receipt of the complaint, Voorhees notified defendant Preferred Mutual Insurance Co. (Preferred) of the pendency of the suit and requested it to defend the action in accordance with its obligation under her homeowner's policy. In an exchange of correspondence, defendant declined Voorhees' demand. Initially, defendant asserted that Sisto's complaint sounded in defamation and that the damage to her reputation claimed did not constitute "bodily injury" under the policy. In a subsequent letter, defendant added that Sisto's claim fell within the policy's exclusion for intentional acts. Voorhees retained an attorney and ultimately settled the Sisto claim for the sum of $750. However, extensive discovery proceedings had occurred prior to the settlement. In the course of these proceedings, Voorhees' attorney had received a report from Sisto's psychiatrist, indicating that Sisto had experienced various physical symptoms as the result of the emotional distress allegedly caused by Voorhees' *569 conduct, including headaches, nausea and stomach and body pains. According to the psychiatrist, these physical effects were consistent with Sisto's subjective complaints and were not idiosyncratic.
Following the settlement of Sisto's suit, Voorhees instituted this action seeking a declaratory judgment that Preferred was responsible for reimbursement of all defense costs, approximately $14,000. Cross-motions for summary judgment were filed. The Law Division judge rendered an oral opinion, finding that although Sisto's claim did not fall within the policy exclusion for intentional acts, the complaint alleged defamation, a cause of action not covered under the insuring agreement. The judge granted summary judgment in Preferred's favor and this appeal followed.

II.
We commence our analysis with the well-settled principle that an insurer's duty to defend an action against the insured is measured by the allegations contained in the complainant's pleadings. Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 512, 210 A.2d 221 (1965); Danek v. Hommer, 28 N.J. Super. 68, 77, 100 A.2d 198 (App.Div. 1953), certif. granted 14 N.J. 465, 102 A.2d 693 (1954), aff'd 15 N.J. 573, 105 A.2d 677 (1954); 8 Appleman, Insurance Law and Practice (Berdal ed. 1979), § 4683 at 42. The duty to defend arises when the complaint states a claim constituting a risk falling within the purview of the policy language. Danek v. Hommer, 28 N.J. Super. at 77, 100 A.2d 198. If the pleadings state facts bringing the injury within the coverage of the policy, the insurer must defend regardless of the insured's ultimate liability to the complainant. 8 Appleman, Insurance Law and Practice, supra, § 4683 at 42. The nature of the damage claim, rather than the actual details of the accident or the ultimate liability of the insured, determines whether the insurer is obliged to defend. Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. at 512, 210 A.2d 221; see also *570 Hackemsack Water Co. v. General Acc. Fire & Life Assur. Corp., 84 N.J. Super. 479, 482-483, 202 A.2d 706 (App.Div. 1964); Van Der Veen v. Bankers Indemnity Ins. Co., 30 N.J. Super. 211, 217, 103 A.2d 900 (App.Div. 1954).
Applying these principles, we first look to the policy language. The standard form policy provides that Preferred will pay all sums recovered against the insured "because of bodily injury ... caused by an occurrence." The word "occurrence" is defined in pertinent part as "an accident." "Bodily injury" means "bodily harm, sickness or disease...." The duty to defend clause is broader than the indemnification provision in that it does not require the "bodily injury" be caused by an "occurrence." However, both clauses are subject to a policy exclusion which excepts from coverage "liability ... caused intentionally by or at the direction of any insured."
We next consider the allegations contained in Sisto's complaint. As we pointed out previously, the complaint was inartfully drafted and ambiguously phrased. The Law Division judge concluded that the fourth count alleged a cause of action for defamation. In the case of a complaint charging defamation, the plaintiff must plead facts sufficient to identify the defamatory words, their utterer and the fact of their publication. Zoneraich v. Overlook Hosp., 212 N.J. Super. 83, 101, 514 A.2d 53 (App.Div. 1986), certif. den. 107 N.J. 32, 526 A.2d 126 (1986). A vague conclusory allegation is not enough. Ibid.; see also Kotok Building v. Charvine Co., 183 N.J. Super. 101, 105, 443 A.2d 260 (Law Div. 1981). Sisto's complaint does not satisfy that requirement. Of course, we have no occasion to consider the merits of Sisto's claim. Rather, our purpose is to determine whether Preferred had a duty to defend by comparing the allegations of Sisto's complaint with the coverage provisions of Voorhees' policy. We point to the defects in Sisto's pleadings to emphasize the uncertainty respecting whether it was her intention to allege defamation or some other cause of action or multiple claims. Construing the fourth count *571 liberally, we conclude that the Law Division judge erred by finding only defamation alleged. In our view, the allegations set forth in the fourth count can just as well be interpreted as pleading the torts of invasion of privacy, negligent infliction of emotional distress and outrage. We must thus consider whether any or all of these causes of actions fall within the coverage of Voorhees' policy.
In a trilogy of decisions, we have addressed the question whether emotional distress qualifies as "bodily injury" under an insuring agreement. We first considered the issue in NPS Corp. v. Insurance Co. of North America, 213 N.J. Super. 547, 517 A.2d 1211 (App.Div. 1986). There, the complaint in the underlying action alleged acts of sexual harassment consisting of non-consensual touching resulting in the complainant's emotional distress and mental anguish. Noting the lengthening line of cases which has recognized that emotional distress is just as real as physical pain and its valuation no more difficult, see Strachan v. John F. Kennedy Memorial Hosp., 109 N.J. 523, 538 A.2d 346 (1988); Saunderlin v. E.I. Dupont Co., 102 N.J. 402, 508 A.2d 1095 (1986); Portee v. Jaffee, 84 N.J. 88, 417 A.2d 521 (1980); Berman v. Allan, 80 N.J. 421, 404 A.2d 8 (1979); Zahorian v. Russell Fitt Real Estate Agency, 62 N.J. 399, 301 A.2d 754 (1973); Falzone v. Busch, 45 N.J. 559, 214 A.2d 12 (1965); Pushko v. Board of Trustees of Teachers' P. & A. Fund, 202 N.J. Super. 98, 493 A.2d 1309 (App.Div. 1985), on remand 208 N.J. Super. 141, 505 A.2d 154 (App.Div. 1986); Eyrich for Eyrich v. Dam, 193 N.J. Super. 244, 473 A.2d 539 (App.Div. 1984), certif. den. 97 N.J. 583, 483 A.2d 127 (1984); Muniz v. United Hosps. Med. Ctr. Pres. Hosp., 153 N.J. Super. 79, 379 A.2d 57 (App.Div. 1977); Lemaldi v. De Tomaso of America, Inc., 156 N.J. Super. 441, 383 A.2d 1220 (Law Div. 1978), we found it highly unrealistic to "separate a person's nerves and tensions from his body" in determining whether a particular injury falls within the coverage of an insuring agreement. NPS Corp. v. Insurance Co. of North America, 213 N.J. Super. at 553, 517 A.2d 1211. We observed that "emotional *572 trauma can be as disabling to the body as a visible physical wound ... [and] can and often does have a direct effect on other bodily functions." Ibid. We thus held that the term "bodily injury" included "claims for emotional distress caused by an assault and battery." Id. at 554, 517 A.2d 1211.
Our decision in NPS was followed by Lumbermen's v. United Serv. Auto., 218 N.J. Super. 492, 528 A.2d 64 (App.Div. 1987), where the insured was sued for defamation. One of the claims made by the complainant in the underlying suit was that the insured's defamatory statements had caused him "embarrassment, humiliation, anguish and distress." Id. at 496, 528 A.2d 64. Based upon that allegation, the insured forwarded the complaint to his insurer which subsequently disclaimed coverage. We held that "[a] cause of action for defamation does not, without more, allege physical or emotional injury to the person defamed within the meaning of the standard homeowner's policy." Id. at 494, 528 A.2d 64. In reaching this result, we reasoned that defamation is an impairment of a "relational" interest in that it denigrates the opinion which others in the community have of the person defamed, and it invades his interest in his reputation and good name. Id. at 498, 528 A.2d 64, citing Prosser & Keeton, Law of Torts (5th ed. 1984), § 111 at 771. We said that "[u]nlike a claim for physical or mental injury, defamation `is not concerned with the plaintiff's own humiliation, wrath or sorrow, except as an element of `parasitic' damages attached to an independent cause of action.'" Lumbermen's, 218 N.J. Super. at 498, 528 A.2d 64; Prosser & Keeton, supra, § 111 at 771.
We last revisited this subject in Wolfe v. State Farm Ins. Co., 224 N.J. Super. 348, 540 A.2d 871 (App.Div. 1988), certif. den. 111 N.J. 654, 546 A.2d 562 (1988). There, the decedent died from carbon monoxide poisoning while she sat in a car owned by the insured. The decedent's father pulled her from the automobile, contacted the local first aid squad and watched helplessly while rescue attempts failed. Members of the decedent's family, including her father, filed claims against the *573 insured for wrongful death, survivorship and emotional distress. The insurer disclaimed liability respecting the father's claim for emotional distress. We rejected the insurer's argument that the emotional distress allegedly suffered by the decedent's father did not constitute "bodily injury" covered by the policy. Id. 224 N.J. Super. at 352, 540 A.2d 871. Viewing the policy language from the perspective of the average insurance purchaser's reasonable expectations, see Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 576, 267 A.2d 527 (1970); Mazzilli v. Accident & Cas. Ins. of Winterthur, 35 N.J. 1, 7, 170 A.2d 800 (1961); Ellmex Const. Co., Inc. v. Republic Ins. Co., 202 N.J. Super. 195, 204-205, 494 A.2d 339 (App.Div. 1985), certif. den. 103 N.J. 453, 511 A.2d 639 (1986); Great American Ins. v. Lerman Motors, Inc., 200 N.J. Super. 319, 326, 491 A.2d 729 (App.Div. 1984), we held that the phrase "bodily injury" in the insuring agreement included claims for emotional distress. Wolfe v. State Farm Ins. Co., 224 N.J. Super. at 353, 540 A.2d 871.
Synthesizing these decisions, the lesson to be learned is that mental anguish qualifies as "bodily injury" at least to the extent that the emotional distress alleged does not constitute "parasitic" damages attached to an independent cause of action. See Lumbermen's v. United Serv. Auto., 218 N.J. Super. at 498, 528 A.2d 64. Where the emotional distress is the product of the impairment of a "relational interest," however, it is arguable that the damages are "parasitic" and do not trigger the duty to defend or indemnify the insured. Id. at 498-499, 528 A.2d 64.
Within that analytical framework, it is clear that mental anguish resulting from the torts of outrage and negligent infliction of emotional distress constitutes a risk insured against under Voorhees' policy. Our courts have long recognized the tort of outrage as a separate cause of action. See, e.g., 49 Prospect Street v. Sheva Gardens, 227 N.J. Super. 449, 471, 547 A.2d 1134 (App.Div. 1988); Hume v. Bayer, 178 N.J. Super. *574 310, 316-318, 428 A.2d 966 (Law Div. 1981); Hafner v. Hafner, 135 N.J. Super. 328, 333-334, 343 A.2d 166 (Law Div. 1975). The outlines of the cause of action are to be found in the Restatement, Torts 2d, § 46 at 71 (1965), which reads in pertinent part:
§ 46. Outrageous Conduct Causing Severe Emotional Distress.
(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
As explained in Comment b of the Restatement:
As indicated in Chapter 47, emotional distress may be an element of damages in many cases where other interests have been invaded, and tort liability has arisen apart from the emotional distress. Because of the fear of fictitious or trivial claims, distrust of the proof offered, and the difficulty of setting up any satisfactory boundaries to liability, the law has been slow to afford independent protection to the interest in freedom from emotional distress standing alone. It is only within recent years that the rule stated in this Section has been fully recognized as a separate and distinct basis of tort liability, without the presence of the elements necessary to any other tort, such as assault, battery, false imprisonment, trespass to land or the like. This Section may be regarded as an extension of the principle involved in the rules stated in §§ 21-34 as to the tort of assault.
Additional support for the recognition of the tort of outrage as a separate cause of action is found in Dean Prosser's treatise on torts. Prosser, Law of Torts (3rd ed. 1964), § 11 at 41. While it is difficult to generalize as to what type of conduct is actionable, the cases cited by Prosser and our decisions disclose the elements that must be proved. They are (1) that the actor intended to inflict emotional distress on the plaintiff or acted in reckless disregard of a high degree of probability that severe emotional distress will follow, (2) that the conduct was extreme and outrageous, (3) that the actions of defendant were the cause of plaintiff's emotional distress, and (4) that the emotional distress that was sustained by plaintiff was severe and not idiosyncratic. See, e.g., 49 Prospect Street v. Sheva Gardens, 227 N.J. Super. at 474, 547 A.2d 1134. Reading Sisto's complaint liberally, we are convinced that the tort of outrage was alleged and that the mental anguish she claimed to suffer qualified as "bodily injury" under Voorhees' policy.
*575 In a similar vein, negligent infliction of emotional distress has long been considered an independent cause of action in New Jersey. See, e.g., Strachen v. John F. Kennedy Memorial Hosp., 109 N.J. at 533-538, 538 A.2d 346; Portee v. Jaffee, 84 N.J. at 90, 417 A.2d 521; Falzone v. Busch, 45 N.J. at 561, 214 A.2d 12. Although our decisions pertaining to the subject have been aptly characterized as a "rather confusing patchwork," emotional distress has been "recognized as a source of recovery subject to rather rigid, formalistic requirements which evolved as a result of the traditional view of such claims as untrustworthy, subject to serious proof problems and bearing the potential for unjust application." Strachan v. John F. Kennedy Memorial Hosp., 209 N.J. Super. 300, 333-334, 507 A.2d 718 (App.Div. 1986) (Long, J., dissenting), aff'd in part and rev'd in part 109 N.J. 523, 538 A.2d 346 (1988). As we noted earlier, we need not determine whether Sisto's claim of negligent infliction of emotional distress had any merit. We merely emphasize that Sisto's complaint alleged that tort, albeit in an oblique and ambiguous manner, and therefore Preferred was contractually obliged to defend Voorhees against the claim.
To recapitulate, our decisions have recognized that emotional distress, either negligently inflicted or resulting from outrageous conduct, constitutes direct and not parasitic damages. While perhaps mental anguish resulting from impairment of a "relational interest" falls beyond the insurer's coverage obligation, a point we need not decide, Sisto's claims of outrage and negligent infliction of emotional distress qualified as "bodily injury" under Voorhees' policy.

III.
We next consider Preferred's argument that Voorhees' conduct was deliberate and fell within the policy's exclusion for "intentional acts." We must review Preferred's contention in light of Sisto's allegation in her complaint that Voorhees acted "willfully, deliberately, recklessly and negligently."
*576 We have alluded previously to the principle that in deciding whether a duty to defend exists, "the complaint should be laid alongside the policy and a determination made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment...." Danek v. Hommer, 28 N.J. Super. at 77, 100 A.2d 198. This general principle is subject to several exceptions, however. When coverage, i.e., the duty to pay, depends upon a factual issue which may not be resolved by the trial of the third party's suit against the insured, the duty to defend may depend upon the actual facts and not upon the allegations in the complaint. Burd v. Sussex Mutual Insurance Co., 56 N.J. 383, 388, 267 A.2d 7 (1970). So too, "[w]henever the [insurer's] position so diverges from the insured's that the carrier cannot defend the action with complete fidelity to the insured, there must be a proceeding in which the carrier and the insured, represented by counsel of their own choice, may fight out their differences." Id. at 391, 267 A.2d 7; see also Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 24-25, 483 A.2d 402 (1984); Heldor Inds. v. Atlantic Mut. Ins., 229 N.J. Super. 390, 399, 551 A.2d 1001 (App.Div. 1988); Lyons v. Hartford Ins. Group, 125 N.J. Super. 239, 247, 310 A.2d 485 (App.Div. 1973), certif. den. 64 N.J. 322, 315 A.2d 411 (1974).
Preferred asserts that these exceptions apply in this case. If Voorhees acted intentionally, the policy exclusion would apply. If she acted either negligently or recklessly, the exclusion for "intentional acts" would not bar coverage. It is argued that the interests of Preferred and Voorhees do not coincide. If Sisto's suit had gone to trial, obviously both the insurer and the insured would want her to fail. Yet, if Sisto were to succeed, Preferred would want the basis to be Voorhees' intentional conduct, since intentional acts are excluded under the policy. Preferred could not be expected to resist that basis of liability with the fervor or fidelity expected of an advocate selected by the insured. See Burd v. Sussex Mutual Insurance Co., 56 N.J. at 389-390, 267 A.2d 7. It is argued that any attorney *577 retained by Preferred to defend Voorhees against Sisto's claim and at the same time to protect Preferred against the coverage claim of Voorhees would be placed in the position of conflict which our courts have said must be avoided. See Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. at 24-25, 483 A.2d 402; Burd v. Sussex Mutual Insurance Co., 56 N.J. at 391, 267 A.2d 7; Heldor Inds. v. Atlantic Mut. Ins., 229 N.J. Super. at 399, 551 A.2d 1001; Lyons v. Hartford Ins. Group, 125 N.J. Super. at 247, 310 A.2d 485. The discharge of the attorney's obligation to Preferred might well require presentation of evidence incompatible with the effective defense of Voorhees or delete its force with the jury. Since the interests of the insurer and the insured were not coextensive, Preferred argues that it was not only within its rights in refusing to defend Voorhees but was in fact ethically obliged to follow that course once it denied coverage.
We disagree. Even assuming that there was a conflict of interest, the result would not be to free Preferred from its covenant to defend, but rather to translate its obligation into one to reimburse the insured if it later developed that the claim was one within the policy covenant to pay. Burd v. Sussex Mutual Insurance Co., 56 N.J. at 390, 267 A.2d 7. The obligation of a carrier faced with a conflict of interest will be dealt with later in our opinion. Suffice it to say here, Preferred, confronted with a real or potential conflict, could not, consistent with its fiduciary obligation, and without any further investigation, see Griggs v. Bertram, 88 N.J. 347, 357, 443 A.2d 163 (1982), or arrangement with Voorhees, simply decline liability, leaving its insured to fend for herself.
We do not read Burd v. Sussex Mutual Insurance Co., 56 N.J. at 394, 267 A.2d 7, as requiring a hearing to determine whether Voorhees' acts were intentional or only reckless or negligent. Our Supreme Court in Burd said that in the event the insurer declines to defend its insured because of a perceived conflict and a judgment is entered, "the carrier may be heard *578 upon the coverage issue in a proceeding upon the policy" and it "will have to reimburse the insured for the cost of the defense if the tort judgment is held to be within the covenant to pay." Ibid. We need not delve into the question concerning what type of hearing was contemplated by the Court. Here, the Sisto suit was settled and no judgment was entered against the insured. Based on the small amount of the settlement, Voorhees can fairly argue that Sisto's claims, which encompassed both intentional and reckless or negligent conduct, were "wholly defeated." Id. at 393, 267 A.2d 7. In that situation the insurer "may fairly be required to reimburse the insured for the cost of the successful defense even though the [insurer] would not have had to pay the judgment if the case had gone against the insured on a finding of intentional injury." Id. at 393, 267 A.2d 7. In any event, Preferred does not seek a hearing for a factual determination whether Voorhees' conduct was intentional. Instead, it requests a remand so that the defense costs can be apportioned between covered and non-covered claims. We now consider Preferred's argument that a remand is necessary for proper allocation of the defense costs incurred by the insured.

IV.
Preferred argues that it should not be responsible for reimbursing Voorhees for the expenses she incurred in defending against non-covered claims, i.e., defamation, invasion of privacy and outrage by intentional rather than reckless conduct. Citing Dunne v. Fireman's Fund Am. Ins. Co., 69 N.J. 244, 353 A.2d 508 (1976), Voorhees contends that where the complaint in the underlying action alleges both covered and non-covered claims, the insurer's duty to provide a defense extends to all of the complainant's causes of action.
Initially, we note that Dunne is inapposite. As our Supreme Court later observed in Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co., supra, "the policy invoked in Dunne *579 apparently imposed a duty upon the insurer to defend [all claims] if any theory of liability would fall within the policy coverage...." 98 N.J. at 25, 483 A.2d 402. Moreover, the insurer in Dunne had undertaken at the outset to defend the entire action pursuant to a reservation of rights agreement with its insured. Dunne v. Fireman's Fund Am. Ins. Co., 69 N.J. at 246, 353 A.2d 508. Therefore, the sole issue confronting the court in Dunne was how to enforce the insurer's previously acknowledged duty to provide a defense for its insured, in view of the possible conflict raised by the circumstance that the insured would not enjoy coverage if liability were imposed on some basis other than negligence.
Our research discloses no reported New Jersey opinions directly on point. To be sure, we have found language in several opinions supportive of Preferred's position. In Central Nat'l Ins. Co. v. Utica Nat'l Ins. Group, 232 N.J. Super. 467, 557 A.2d 693 (App.Div. 1989), for example, it is said that "[t]he carrier's promise is to defeat or pay a claim within the policy coverage" and that "[t]he duty exists only as to counts stating a theory of recovery for which coverage is provided, but not as to counts not covered." Id. at 470, 557 A.2d 693. See also City Council of Elizabeth v. Fumero, 143 N.J. Super. 275, 288-289, 362 A.2d 1279 (Law Div. 1976). However, there is language in other cases suggestive of a contrary result. In Mount Hope Inn v. Travelers Indemnity Company, 157 N.J. Super. 431, 384 A.2d 1159 (Law Div. 1978), Judge Polow wrote that the "duty [to defend] remains even though ambiguity may result based upon other language charged in other parts of the complaint or other allegations are made which do not come within the provisions of the policy." Id. at 437, 384 A.2d 1159. The judge went on to say that "[i]f the claim is stated in two conflicting theories, one which requires coverage and the other which does not, the carrier has no choice. It must defend." Id. at 440, 384 A.2d 1159. In none of these decisions, however, was the question of apportionment raised.
*580 Elsewhere, the courts have held that an insurer must bear the entire cost of defense when there is no reasonable means of prorating the expenses incurred between covered and non-covered claims. See, e.g., Burlington Drug Co., Inc. v. Royal Globe Ins. Co., 616 F. Supp. 481, 485 (D.Vt. 1985); Crist v. Insurance Co. of North America, 529 F. Supp. 601, 604 (D.Utah 1982); Tampa Electric Co. v. Stone & Webster Engineering Corp., 367 F. Supp. 27, 31 (M.D.Fla. 1973); Hogan v. Midland Nat'l Insurance Co., 3 Cal.3d 553, 91 Cal. Rptr. 153, 476 P.2d 825 (1970); Jostens, Inc. v. CNA Ins./Continental Cas., 403 N.W.2d 625 (Minn. 1987); Home Insurance Co. v. Pinske Bros., Inc., 160 Mont. 219, 500 P.2d 945 (1972); National Steel Construction Co. v. National Union Fire Insurance Co., 14 Wash. App. 573, 543 P.2d 642 (1975). A different rule has been applied where defense costs can be readily apportioned. See Equal Employment Opportunity Comm'n v. Southern Publishing Co., Inc., 894 F.2d 785, 791 (5th Cir.1990); Budd Company v. Travelers Indemnity Company, 820 F.2d 787, 790 (6th Cir.1987); Insurance Co. of North America v. Forty-Eight Insulations, Inc., 633 F.2d 1212, 1224-1225 (6th Cir.1980), cert. den. 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981); Waite v. Aetna Casualty and Surety Company, 77 Wash.2d 850, 467 P.2d 847, 852 (1970) (en banc).
Against this backdrop, we perceive no sound basis to remand for a hearing on apportionment of defense costs. Instead, we are convinced that in its pragmatic aspect any precise allocation of expenses would be impossible. It appears likely that a great deal of the defense costs was incurred in general preparation and cannot be separated by distinct claims or time periods. Moreover, requiring Preferred to bear responsibility for defense costs is consonant with the strong public policy in favor of requiring the provision of a defense where coverage is at least arguable. In this case, Preferred breached its contractual duty to defend when it refused coverage without taking any steps to investigate Sisto's claim or otherwise seek clarification. As we stressed previously, Voorhees was left to fend for *581 herself. Under these circumstances, Preferred should be required to reimburse Voorhees for the full amount of the defense costs.
Reversed and remanded for entry of judgment in favor of plaintiff.
DEIGHAN, J.A.D. (dissenting).
I respectfully disagree with my colleagues that the term "bodily injury" as used in this homeowner's policy "encompasses the mental and psychological sequelae resulting from the torts of outrage and negligent infliction of emotional distress and therefore the insurer had a duty to defend." In my view, there was no "accident" or "occurrence" under the coverage provisions of the policy and, therefore, Preferred Mutual Insurance Company had no duty to defend. I further differ with the conclusion that "[v]iewing the policy language from the perspective of the average insurance purchaser's reasonable expectations, ... the phrase `bodily injury' in the insuring agreement included claims for emotional distress. Wolfe v. State Farm Ins. Co., 224 N.J. Super. [348, 353, 540 A.2d 871 (App.Div. 1988), certif. denied, 111 N.J. 654, 546 A.2d 562 (1988)]." Initially, there can be no question but that there is a "lengthening line of cases which has recognized that emotional distress is just as real as physical pain," as set forth in the case cited in the maj. opinion at 571, but the existence of mental anguish and emotional distress as a tort concept giving rise to liability for a wrongful act is irrelevant to the issue before us  the construction of the terms and conditions of an insurance policy. It goes without saying that there must be an underlying wrongful act to establish liability but the question here is whether a wrongful act involving purely mental anguish and emotional distress is an "accident" or "occurrence" causing "bodily harm" within the coverage of the insurance policy in this matter. I would hold that there is no coverage under the facts and circumstances presented here.
*582 Under the pertinent coverage clause, defendant promised to pay all sums recovered against plaintiff "because of bodily injury... caused by an occurrence to which this coverage applies." (Emphasis in original.) "Occurrence" is defined in pertinent part as "an accident." The duty-to-defend clause provides that Preferred "will defend any suit seeking damages, provided the suit resulted from bodily injury ... not excluded under this coverage." (Emphasis in original.) My colleagues construe this language to mean that the "duty-to-defend clause" is broader than the indemnification provision in that it does not require the "bodily injury" to be caused by an "occurrence." It seems to me that it would be difficult, if not impossible, to have damages without an "occurrence" or "accident." As noted in Burd v. Sussex Mutual Insurance Company, 56 N.J. 383, 388-89, 267 A.2d 7 (1970), "[t]he sense of the covenant is to defend suits involving claims which the carrier would have to pay if the claimant prevailed in the accident. The covenant to defend is thus identified with the covenant to pay." (Emphasis added.) A requirement that a loss be accidental in some sense in order to qualify as the occasion for liability is implicit.
Nor do I concur that the doctrine of "reasonable expectation" applies under the terms of the policy of insurance at issue. Our courts have endorsed the principle of "reasonable expectations" of the insured to render a "fair interpretation" of the boundaries of insurance coverage. DiOrio v. New Jersey Manufacturers Ins. Co., 79 N.J. 257, 269, 398 A.2d 1274 (1979). Under the doctrine, the insured's reasonable expectations are brought to bear on misleading terms and conditions of insurance contracts and genuine ambiguities are resolved against the insurer. Id. In applying this principle, an objectively reasonable interpretation of the average policyholder is accepted so far as the language of the insurance contract will permit. Id.
The rule of liberal construction cannot however operate to authorize the perversion of the language and the intention of the contracting parties for the purpose of creating an ambiguity *583 where none exists. 13 Appleman, Insurance Law and Practice § 7486, at 622 (1976). The power to bind an insurer must be found in the written contract of insurance and the parties will be bound by the plain language of the contract. Id. The court cannot rewrite the contract for the parties, nor is it empowered, even under the guise of good faith and peculiar circumstances, to alter the terms of an otherwise unambiguous contract. Id. at 622-23. If plainly expressed, insurers are entitled to have liability limitations construed and enforced as expressed. Id. at 623. See Longobardi v. Chubb Ins. Co. of New Jersey, 121 N.J. 530, 537, 582 A.2d 1257 (1990); see also Sinopoli v. North River Ins. Co., 244 N.J. Super. 245, 250-51, 581 A.2d 1368 (App.Div. 1990) (exclusion in homeowner's policy for bodily injury arising from a business-related claim does not violate the insured's reasonable expectations).
In my view, the term "bodily injury" in the insurance contract contemplates injury to the physical components of the body, not to solely subjective nonphysical mental suffering. Further, the term "accident" or "occurrence" in an insurance policy does not include "false and erroneous statements," which interfere with "rights of privacy, severe humiliation, embarrassment, emotional distress and mental anguish," which damages "reputation as a professional teacher."
To begin with, the term "bodily injury" is to be given its ordinary and well-understood meaning. Srebnik v. State, 245 N.J. Super. 344, 351, 585 A.2d 950 (App.Div. 1991). "Bodily" is defined as "[p]ertaining to or concerning the body; of or belonging to the body or the physical constitution; not mental but corporal." Id. (citing Black's Law Dictionary 159 (5th ed. 1979)) (emphasis supplied). "Bodily injury" "[g]enerally refers only to injury to the body or to sickness or disease contracted by the injured as a result of injury." Black's Law Dictionary 159. It cannot be denied that "emotional distress is just as real as physical pain." See cases cited ante at maj. op. at 571; see *584 also Srebnik, 245 N.J. Super. at 349-354, 585 A.2d 950; Ayers v. Township of Jackson, 106 N.J. 557, 577, 525 A.2d 287 (1987). Nevertheless, here we are dealing with "subjective" and "non-objective types of damages" not related to physical injuries. In this context the term "personal injury" in an insurance policy is broader and more comprehensive than the term "bodily injury." Nuzzi v. United States Casualty Co., 121 N.J.L. 249, 254, 1 A.2d 890 (E. & A. 1938).
This distinction was recognized in Lumbermen's v. United Servs. Auto. Ass'n, 218 N.J. Super. 492, 528 A.2d 64 (App.Div. 1987). There, a claimant instituted an action for defamation and did not allege any bodily injury. There, as here, there was no bodily contact but the tort was purely based upon defamatory statements. We held that "personal injuries" such as false arrest, libel or slander and wrongful entry or eviction, as mental injuries, are not "bodily injuries" covered under the insurance policy. We noted that the United Service Auto Association policy did not cover "personal injury" but the Lumbermen's policy expressly defined "personal injury" to include physical and mental harm. Id. at 499, 528 A.2d 64. Coverage for personal injury liability may be obtained for protection against claims stemming from libel, slander and similar offenses; personal injury is not the same as "bodily injury" in insurance terminology. 7A Appleman, Insurance Law and Practice § 4501.14, at 286 (Berdal ed. 1979). "Personal injuries" from nonphysical contact may be added by endorsement to an insurance policy. Lumbermen's, 218 N.J. Super. at 498-99, 528 A.2d 64 (citing Riegel, Miller & William, Insurance Principles and Practices, Property and Liability 430 (6th ed. 1976)).
In Allstate Insurance Company v. Diamant, 401 Mass. 654, 518 N.E.2d 1154 (1988), a high school teacher instituted an action against a student's parents who wrote allegedly defamatory letters to the principal of the high school. The teacher *585 instituted suit against the Diamants for defamation and intentional infliction of emotional distress, which did not involve any physical harm or manifestation of physical injury. The Diamants sought to have Allstate defend them under their homeowner's policy. Id. 518 N.E.2d at 1155. The court noted that "the term `personal injury' is broader and includes not only physical injury but also any affront or insult to the reputation or sensibilities of a person." Id. at 1156. On the other hand, "bodily injury" is a "narrow term and encompasses only physical injuries to the body and the consequences thereof." Id. In finding that the term "bodily injury" is not ambiguous, the court noted that "`[a]s a general rule, other jurisdictions have found the term `bodily injury' to be unambiguous and understood to mean hurt or harm to the human body, contemplating actual physical harm or damage to a human body.'" Id. at 1157 (quoting Farm Bureau Mut. Ins. Co. v. Hoag, 136 Mich. App. 326, 334, 356 N.W.2d 630 (1984) (bodily injury does not include humiliation and mental anguish and suffering). See also Cotton States Mutual Ins. Co. v. Crosby, 244 Ga. 456, 459, 260 S.E.2d 860 (1979); American & Foreign Ins. Co. v. Church Schools, 645 F. Supp. 628, 632 (E.D.Va. 1986); St. Paul Fire & Marine Ins. Co. v. Campbell County School Dist. No. 1, 612 F. Supp. 285, 287 (D.Wyo. 1985); Grant v. North River Ins. Co., 453 F. Supp. 1361, 1367 (N.D.Ind. 1978); Artcraft of N.H., Inc. v. Lumberman's Mut. Casualty Co., 126 N.H. 844, 846, 497 A.2d 1195 (1985); McCroskey v. Cass County, 303 N.W.2d 330, 336 (N.D. 1981). Further, the phrase "sickness and disease" as contained in the definition of "bodily injury" also requires a showing of physical affliction. Diamant, 518 N.E.2d at 1157 n. 3 (citing Palumbo v. Metropolitan Life Ins. Co., 296 Mass. 358, 5 N.E.2d 836 (1937).
The use of the term "bodily injury" in the policy limits the harm covered by the policy to physical injury, sickness, or disease and does not include nonphysical harm to the person.... In tort actions alleging mental suffering, the courts have consistently distinguished mental and emotional harm from physical harm, whether or not they recognize mental suffering as a separate cause of action. *586 See Piorkowski v. Liberty Mutual Ins. Co., 68 Wis.2d 455, 228 N.W.2d 695 (1975); First National Bank of Jacksonville v. Bragdon, 84 S.D. 89, 167 N.W.2d 381 (1969); State Farm Mutual Auto. Ins. Co. v. Village of Isle, 265 Minn. 360, 122 N.W.2d 36 (1963); Stewart v. Rudner, 349 Mich. 459, 84 N.W.2d 816 (1957); Curnett v. Wolf, 244 Iowa 683, 57 N.W.2d 915 (1953); LaSalle Extension University v. Fogarty, 126 Neb. 457, 253 N.W. 424 (1934).
Rolette County v. Western Casualty & Sur. Co., 452 F. Supp. 125, 130 (D.N.D. 1978) (emphasis in original). See also Mellow v. Medical Malpractice Joint Underwriting Ass'n of Rhode Island, 567 A.2d 367 (R.I. 1989) (patient's humiliation, shame, emotional distress, and mental anguish as a result of physician's disclosure of patient's blood alcohol level to public not "bodily injury" within the physician's homeowner's policy); Continental Casualty Co. v. Synalloy Corp., 667 F. Supp. 1550 (S.D.Ga. 1985) (mental injuries sustained by chemical manufacturer's employees not "bodily injury" under the manufacturer's general liability policies).
"Bodily harm" is any impairment of the physical condition of the body, including illness or physical pain. Restatement (Second) of Torts § 905, at 456 (1979) (emphasis added). Thus, the Restatement defines bodily harm or injury as relating to the physical condition of the body but it may include mental harm, id., such as emotional distress, id. at 457, humiliation, id., and fear and anxiety, id. at 458. Thus, while bodily harm pertains to the physical condition of the body, it may include related mental harms or injury.
The majority's reliance upon NPS Corp. v. Insurance Co. of N.A., 213 N.J. Super. 547, 517 A.2d 1211 (App.Div. 1986), and Wolfe v. State Farm Ins. Co., 224 N.J. Super. 348, 540 A.2d 871 (App.Div. 1988), certif. denied, 111 N.J. 654, 546 A.2d 562 (1988), is inapposite. NPS Corp. held that it was the insurer's duty to defend a "bodily injury" clause concerning a complainant's emotional distress and mental anguish. 213 N.J. Super. at 548, 517 A.2d 1211. The case involved sexual harassment based upon an assault and battery in touching the insured's employee. *587 This distinction was noted in Lumbermen's v. United Servs. Auto. Ass'n, 218 N.J. Super. at 500, 528 A.2d 64.
Wolfe v. State Farm Ins. Co., 224 N.J. Super. 348, 540 A.2d 871, is unpersuasive. There, the insured's estate sued for emotional distress negligently caused when a family watched another family member die from carbon monoxide poisoning after being pulled from the insured's car. Applying the "reasonable expectations doctrine," the court, relying upon NPS Corp., found there was coverage under the "bodily injury" term in the insurance policy. Id. at 352-53, 540 A.2d 871. Curiously, the court ignored Lumbermen's as well as Nuzzi v. United States Casualty Co., which recognized that "personal injuries" in an insurance concept are broader and more comprehensive than "bodily injuries." 121 N.J.L. 254, 1 A.2d 890.
Furthermore, Wolfe relied on Portee v. Jaffee, 84 N.J. 88, 417 A.2d 521 (1980), which recognized an independent cause of action for mental anguish and emotional distress by a mother in witnessing the serious injury and death to her seven-year-old son, even though she had not been subject to any risk of physical harm. The Court required the following elements to establish this type of mental and emotional harm:
The cause of action we approve today for the negligent infliction of emotional distress requires proof of the following elements: (1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress. We find that a defendant's duty of reasonable care to avoid physical harm to others extends to the avoidance of this type of mental and emotional harm.
Id. at 101, 417 A.2d 521.
The Court determined that observance of "either death or this type of serious injury is necessary to permit recovery" and that these elements would eliminate "mere conjecture and speculation," id. at 96, 417 A.2d 521, and establish "genuine suffering that flows from such harm." Id. at 98, 417 A.2d 521. These elements are not present here. See Advisory Com'n v. *588 Diamond Shamrock, 243 N.J. Super. 170, 578 A.2d 1248 (App. Div. 1990), which held that toxic chemicals without physical injuries could not support a claim for emotional distress damages.
The observance of death or serious injury to establish "genuine suffering" undoubtedly is part of the reason why there is a distinction in insurance policies between "personal injuries" and "bodily injuries." In the absence of an indicia of genuineness provided by resulting bodily harm, such emotional disturbance may be too easily feigned, depending, as it must, very largely upon subjective testimony of the claimant. As noted above, coverage for these types of emotional disturbances may be procured by an endorsement for an additional premium to cover the additional risks.
I, therefore, would hold that the subjective claims of emotional distress, interference with the rights of privacy, humiliation, embarrassment and mental anguish, inflicted by statements alone do not come within the definition of "bodily injury" in the homeowner's insurance policy.
Furthermore, in my view, false and erroneous verbal statements concerning the competence and fitness of a claimant do not constitute an "accident." "In its most commonly accepted meaning, or in its ordinary or popular sense, [accident] may be defined as meaning: a fortuitous circumstance, event or happening; an event happening without any human agency, or if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected by the person to whom it happens ... something unforeseen, unexpected, unusual, extraordinary or phenomenal, taking place not according to the usual course of things or events, out of the range of ordinary calculations." Black's Law Dictionary 14. See John's Cocktail Lounge, Inc. v. North River Ins. Co., 235 N.J. Super. 536, 541-42, 563 A.2d 473 (App.Div. 1989). *589 In workmen's compensation, it is usually defined as an "unlooked-for mishap or untoward event which is not expected or designed." See, e.g., Dudley v. Victor Lynn Lines, 32 N.J. 479, 490, 161 A.2d 479 (1960). Under a general comprehensive liability policy, "it is an unforeseen occurrence, i.e., an `accident.'" Malanga v. Manufacturers Cas. Ins. Co., 28 N.J. 220, 227, 146 A.2d 105 (1958).
"As used in insurance policies [an accident] is simply an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force, but it does not mean the natural and ordinary consequences of a negligent act." 7A Appleman, Insurance Law and Practice § 4492, at 17 (Berdal ed. 1979). In general, courts are inclined to give the term "accident" the meaning of common, ordinary and popular sense. Id. at 16. See John's Cocktail Lounge v. North River Ins. Co., 235 N.J. Super. 536, 563 A.2d 473 (termination of a barmaid's employment not an "accident" within the meaning of a comprehensive general liability insurance policy).
In my view, false or erroneous statements concerning the competency or fitness of a claimant or placing the claimant before the public in a false light and causing mental anguish and emotional distress is not an accident under the terms of a homeowner's insurance policy.