125 N.J. Super. 239 (1973)
310 A.2d 485
JEREMIAH LYONS, PLAINTIFF-APPELLANT,
v.
HARTFORD INSURANCE GROUP, DEFENDANT-RESPONDENT AND KATHLEEN BERGER, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF RICHARD BERGER, DECEASED, INDIVIDUALLY, AND AS GUARDIAN AD LITEM FOR BARBARA ANN BERGER, AN INFANT, JOHN BERGER, AN INFANT, KATHLEEN BERGER, AN INFANT, AND MARGARET BERGER, AN INFANT, DEFENDANT-APPELLANT AND THE CITY OF JERSEY CITY, THE FRIENDLY SONS OF THE SHILLELAGH AND THE TOWNSHIP OF MADISON, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1973.
Decided October 10, 1973.
*241 Before Judges CONFORD, HANDLER and MEANOR.
Mr. Theodore A. Gartner argued the cause for plaintiff-appellant (Mr. Timothy K. Madden, Director, Hudson County Legal Services, attorney).
Mr. Eugene M. Purcell argued the cause for defendant-respondent.
Mr. Richard E. Brennan argued the cause for defendant-appellant (Messrs. Shanley & Fisher, attorneys).
The opinion of the court was delivered by MEANOR, J.A.D.
Plaintiff here is defendant in a pending wrongful death action and is an insured under a homeowner's policy issued by defendant Hartford which declined to defend the death action on his behalf under its personal liability coverage. Plaintiff seeks by this declaratory judgment action judicial compulsion upon Hartford to defend and pay if necessary, and appeals from an adverse determination.
*242 Plaintiff Lyons for over 20 years had been a Jersey City police officer. On May 15, 1971 he decided to attend an Irish feis[1] being held at the Freehold Race Track. He went alone. There he consumed beer and struck up an acquaintance with one Ed Perry. At about 7 P.M. he accompanied the Perry family, first to a diner and then to the Shillelagh Club. Lyons consumed more beer. The Perrys left, but plaintiff remained, still drinking.
At approximately 3 A.M. Lyons was in front of the club's entrance when he heard a female voice refer to coffee. This was Kathleen Berger. Lyons invited himself on the coffee trip, anticipating a visit to a diner. He entered the Berger car and sat in the right rear next to the eventual decedent, Richard Berger, husband of Kathleen, the driver. "Tiger" McFadden occupied the right front.
Instead of proceeding to a restaurant or diner, Mrs. Berger drove to Old Bridge and stopped at a private home. She rang the doorbell but did not obtain a response. Lyons then banged loudly on the door, which angered Mr. Berger.
In the car, with the occupants in the same positions, Richard Berger slapped plaintiff and McFadden punched him in the mouth, drawing blood. The car stopped and Berger and McFadden attempted to force plaintiff's exit, which he resisted. Mrs. Berger suggested that Lyons be returned to the Shillelagh Club parking lot where his car was parked, and drove there.
As plaintiff left the Berger vehicle he hurled an insulting remark at Berger and McFadden. He was walking toward his vehicle when he was struck from behind and knocked down. When down, he was again assaulted. He scrambled *243 away, turned and drew his service revolver. He was facing the glare of the headlights of the Berger car. He saw two figures approaching him. Lyons fired, killing Berger. He insisted his intention was to fire a warning shot over the heads of his assailants but inadvertently the gun went off prematurely.
Plaintiff was the only witness at the trial in the Chancery Division. After his testimony, plaintiff rested and Hartford's motion to dismiss was granted.
Under our present practice, R. 4:37-2(b), the judicial function in assessing the sufficiency of proofs at the end of the plaintiff's case on a motion to dismiss is the same in nonjury as in jury cases. The test to be applied is well known. Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969), and cases there cited. Prior to the 1969 rules revision, a trial judge sitting nonjury was permitted to make findings adverse to the plaintiff at the close of his proofs and dismiss even though a prima facie case had been established. This is now no longer possible.
The trial judge did not apply the correct standard on the motion to dismiss. Instead of viewing the proofs from the point of accepting the plaintiff's testimony as true, giving him the benefit of all legitimate inferences therefrom and rejecting all unfavorable evidence and permissible conclusions, the trial judge proceeded to make findings of fact on the motion. He concluded that Lyons was drunk, a fact not admitted beyond plaintiff's statement that he was "feeling the beer." The judge also said: "I do not attach credibility to his testimony that the discharge of the gun itself was an accident or premature." Credibility should have played no part in the determination the court was then called upon to make.
It is obvious, however, that we should affirm if the judgment was correct though the reasoning in error. On the other hand, if there is any legitimate view of the proofs that would sustain a judgment for plaintiff, we must reverse. Assessing the evidence most favorably to Lyons, a factfinder could but *244 would not be compelled to reach the following conclusions. (see Ferdinand v. Agricultural Ins. Co. of Watertown, N.Y., 22 N.J. 482 (1956)):
1. At the time of the shooting, Lyons was dazed from a combination of alcohol and beating;
2. He was in legitimate fear of grave bodily harm from his two assailants;
3. He drew his gun with an intent to fire a warning shot over their heads and without an intent to kill or inflict bodily harm;
4. Inadvertently the gun fired before he had raised it to the point where he intended to fire, causing Berger's death.
The coverage clauses pertinent are:

COVERAGE E  PERSONAL LIABILITY
This Company agrees to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * to which this insurance applies, caused by an occurrence * * *

* * *

EXCLUSIONS
This policy does not apply:
1. Under Coverage E  Personal Liability * * *

* * *
f. to bodily injury * * * which is either expected or intended from the standpoint of the insured. * * *

* * *

ADDITIONAL DEFINITIONS

* * *
5. "occurrence" means an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury * * *
Unfortunately, the case was tried without reference to the exclusion clause. Hartford's position is that Lyons, under the circumstances, is not within its coverage since the shooting of Berger was not an "occurrence" as that term is defined.
New Jersey public policy denies insurance indemnity for the civil consequences of one's own intentional wrongdoing. Malanga v. Manufacturers Cas. Ins. Co., 28 N.J. *245 220, 225 (1958); Ruvolo v. American Cas. Co., 39 N.J. 490, 496 (1963). The exclusion here probably has no more effect than that which the law would imply in its absence. In any event, it is impossible for us to ignore the exclusion for it may be raised on remand and virtually all of the relevant reported decisions deal with such a clause or one of similar wording.
The general rule is that coverage exists under insuring and exclusion clauses identical or similar to the ones involved here for the unintended results of an intentional act, but not for damages assessed because of an injury which was intended to be inflicted. Thus, in Smith v. Moran, 61 Ill. App.2d 157, 209 N.E.2d 18 (App. Ct. 1965), the insured, angry with one Dolores Nelson, fired multiple shots in her direction. The first shot struck Nelson; the second hit plaintiff, a co-employee of Nelson with whom the insured had no quarrel and who received a shot intended for Nelson. The policy excluded coverage for injury "caused intentionally by or at the direction of the Insured." Pointing out that injury to plaintiff was unintended and distinguishing between intentional acts and intended results, coverage was held to exist.
There are many decisions making this distinction, uniformly holding that there is coverage for unintended results. For example: Jackson v. Lajaunie, 253 So.2d 540 (La. Ct. App. 1971) (plaintiff shot in chest during horseplay with gun aimed at him thought to contain blanks), Morritt v. Gallagher, 370 Mich. 578, 122 N.W.2d 687 (Sup. Ct. 1963) (insured threw lighted firecracker into room with plaintiff inside intending to frighten but instead causing personal injury); Lumbermens Mut. I. Co., Mansfield, Ohio v. Blackburn, 477 P.2d 62 (Okl. Sup. Ct. 1970) (rock thrown without intent to injure; court held that to preclude coverage there must be an intent to inflict the injury actually inflicted upon the person intended to be injured and not another; Smith v. Moran, supra, cited with approval); Putman v. Zeluff, 372 Mich. 553, 127 N.W.2d 374 (Sup. Ct. *246 1964) (boy in woods fearful of wild dogs fired warning shot at three dogs approaching him; two dogs fled but plaintiff's valuable hunting dog did not; insured fired toward oncoming dog intending to stop but not destroy it; dog killed; coverage found); Walker v. Champion, 274 So.2d 840 (La. Ct. App. 1973) (apparently contained exclusion clause identical to case at hand; youthful horseplay in throwing bottles; plaintiff's loss of eye "neither expected nor intended").
On the other hand, where the intentional act has resulted in intended injury, even where the injury inflicted is different or more severe than intended, coverage has been denied. In Terito v. McAndrew, 246 So.2d 235 (La. Ct. App. 1971), the insured used loud and profane language in speaking to a barmaid. Plaintiff, also seated at the bar, verbally remonstrated. The insured swung at plaintiff intending to "shut him up," missed his punch, fell into plaintiff, knocked him down and fractured his knee. The clauses involved in Terito were nearly identical to those in the present matter. In denying coverage, the court said:
If McAndrew would be found liable for the incident, it would clearly be to his benefit (and to Terito's, from a standpoint of financial recovery) to deny that any intent was possible due to intoxication and to proceed to collect from the insurer. Such an admission in the answer to the main demand is not binding on the insurer denying coverage on the theory that the act was intended. In fact, McAndrew denied at trial that he was intoxicated and Mrs. Watson corroborated that fact. He admitted that he intended to hit Terito to shut the latter's mouth. Even if he was intoxicated, as found by the trial judge, he obviously was able to form the necessary intent to commit a battery. Fire and Casualty contends that such an incident cannot be called an "accident", within the policy terms, and must be an intentional act. Thus, all direct and natural consequences flowing therefrom are considered in fundamental tort law to have been intended by the actor. We agree with this contention, for it would indeed be illogical to say that an intentional attack may be come an "accident" if the resulting injury is not one specifically contemplated by the attacker. [at 239]
Other cases denying coverage in instances of actually intended injury are: MacDonald v. United Pacific Ins. Co., *247 210 Or. 395, 311 P.2d 425 (Sup. Ct. 1957) (insured committed assault and battery); Stout v. Grain Dealers Mut. Ins. Co., 307 F.2d 521 (4 Cir.1962) (insured shot fleeing peeping tom). See also, Brasseaux v. Girouard, 269 So.2d 590 (La. Ct. App. 1972), which discusses the impact of self-defense where coverage is excluded for intentionally caused injuries.
Thus, the distinction between intended and unintended results of intentional acts is well recognized. The trial court did not apply this principle. The oral opinion below can be construed as holding that if Lyons intended to fire without any specific intent to cause death or bodily harm, coverage did not exist. Such a principle is at war with the authorities discussed here. The short of it is, if Lyons intended to maim or kill Berger he has no coverage. If his intent was, as he says, to fire a warning shot, but he unintentionally fired prematurely, coverage exists.
The usual exclusion clause found in the cases we have cited excludes coverage for injury "caused intentionally by or at the direction of the insured." We have referred twice in this opinion to cases which appeared to have the exclusion contained in the present policy  one that excludes coverage for "bodily injury * * * which is either expected or intended from the standpoint of the insured." Under the circumstances present, either clause supports the result we have reached.
Citing Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504 (1965), Lyons argues that Hartford is bound to defend him because the complaint in the death action contains allegations of negligently inflicted death. While it may be the general rule that an insurer's duty to defend is ascertained by comparing complaint and policy to determine if allegations made are within coverage, this case represents a necessary exception. Hartford cannot defend without being put in a conflict of interests. Burd v. Sussex Mut. Ins. Co., 56 N.J. 383 (1970); Stout v. Grain Dealers Mut. Ins. Co., supra. The present action for declaratory relief is proper at this time.
*248 The record shows that Hartford moved before trial for transfer to the Law Division or in the alternative for jury trial. This was denied on the merits, the court holding that the relief sought was primarily equitable. At oral argument Hartford requested that if the case were remanded we reverse this ruling. We cannot consider the point, for it can only be brought here by cross-appeal and none has been filed. Franklin Discount Co. v. Ford, 27 N.J. 473, 491 (1958).
The judgment below is reversed and the matter is remanded for a new trial in accordance with this opinion.
NOTES
[1] Webster's New International Dictionary, (2d ed. unabridg., 1947) defines "feis" as follows:

a. A convention or assembly in ancient Ireland at which laws were promulgated and intellectual, artistic, and physical competitions held. The greatest of these conventions was the triennal Feis of Tara.
b. A Gaelic literary or musical meeting, esp. in Ireland.