248 N.J. Super. 458 (1991)
591 A.2d 677
SL INDUSTRIES, PLAINTIFF-APPELLANT,
v.
AMERICAN MOTORISTS INSURANCE COMPANY AND KEMPER INSURANCE COMPANY, DEFENDANTS/THIRD-PARTY PLAINTIFFS-RESPONDENTS,
v.
FEDERAL INSURANCE COMPANY, THIRD-PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 29, 1991.
Decided May 30, 1991.
*460 Before Judges J.H. COLEMAN and LANDAU.
Stacy L. Moore argued the cause for the appellant SL Industries (Parker, McKay & Criscuolo, attorneys, Stacy L. Moore, of counsel, Maryann C. O'Brien, on the brief).
William A. Garrigle argued the cause for third-party plaintiffs-respondents American Motorists Insurance Company and Kemper Insurance Company (Garrigle & Palm, attorneys, William A. Garrigle, of counsel, Deborah T. Wolf on the brief).
*461 Shanley & Fisher, attorneys for third-party defendant-respondent Federal Insurance Company filed a letter of non-participation (Richard E. Brennan, on the letter).
The opinion of the court was delivered by LANDAU, J.A.D.
Plaintiff SL Industries (SL) appeals from the grant of summary judgment to defendant American Motorists Insurance Company and Kemper Insurance Group (collectively American) holding that American had no duty to defend or indemnify SL under the terms of a General Liability policy and a Comprehensive Catastrophe Liability Policy.
The facts giving rise to SL's claim of coverage are as follows. On January 23, 1986, Newell Whitcomb (Whitcomb), an employee of SL, filed a complaint in the Federal District Court of New Jersey against SL and John Instone (Instone), SL's chief executive officer. Whitcomb alleged violations of the Age Discrimination Employment Act, 29 U.S.C. § 626, the Fair Labor Standards Act of 1938, 29 U.S.C. § 211(b), §§ 216-217, and fraudulent misrepresentation. SL promptly notified American of the lawsuit by letter dated March 5, 1986. American declined coverage under the policies because "the allegations in the complaint [did] not fit the definition of bodily injury or property damage as defined in the policy."
As a result of American's refusal to defend, SL retained counsel. During the course of discovery, Whitcomb particularized the injuries he allegedly suffered in order to sustain a claim of damages. In response to interrogatory number 32, Whitcomb stated:
Since discovering that he was treated unfairly by defendants, plaintiff has suffered loss of sleep, loss of self-esteem, humiliation and irritability.
Whitcomb supplemented that response by stating that "plaintiff has received treatment for his emotional pain and suffering from Dr. Floyd S. Cornelison of Wilmington, Delaware." Whitcomb also included among his summary of damage elements a *462 claim for pain and suffering. The Pretrial Stipulation and Order stated:
Plaintiff seeks an additional $150,000.00 to compensate him for physical and mental pain and suffering, including humiliation, loss of self-esteem, irritability and sleeplessness.
Thereafter, on July 22, 1988, SL made a second demand upon American to provide coverage. Although SL set forth Whitcomb's claim for emotional damages and provided it with the portion of the pre-trial order pertaining to that claim, American refused to defend or indemnify SL. On September 7, 1988, SL, Instone and Whitcomb entered into a settlement agreement whereby Whitcomb received $400,000.00.
On January 25, 1989, SL filed a complaint against American and Kemper seeking a declaratory judgment that the Whitcomb action was within the coverage afforded by the policies and for reimbursement of the settlement award as well as costs of defense. Cross motions for summary judgment were filed by all parties, including Instone's directors and officers liability carrier Federal Insurance Company (Federal), alleging that it was improperly made a third party. By Order dated April 27, 1990, American's motion for summary judgment was granted; SL's motion for summary judgment was denied; and Federal's motion was rendered moot since the court dismissed SL's complaint.
SL raises four issues on this appeal: 1) that American had a duty to defend based upon the allegations contained in Whitcomb's complaint; 2) that American had a duty to defend when it subsequently learned of Whitcomb's specific claim for emotional damages; 3) that emotional distress and mental anguish constitute "bodily injury", "personal injury" and an "occurrence" under the terms of each policy so as to trigger American's duty to defend; and 4) that American is liable for settlement monies paid to Whitcomb as well as attorneys' fees and costs incurred in the declaratory judgment action and this appeal.
*463 As a general rule, an insurer's duty to defend an action will arise when allegations in the pleadings state such facts which may potentially bring the injury within coverage of the policy. Voorhees v. Preferred Mutual Ins. Co., 246 N.J. Super. 564, 570-71, 588 A.2d 417 (App.Div. 1991); Hartford Ins. Group v. Marson Constr. Corp., 186 N.J. Super. 253, 257, 452 A.2d 473 (App.Div. 1982), certif. denied 93 N.J. 247, 460 A.2d 656 (1985); Danek v. Hommer, 28 N.J. Super. 68, 76, 100 A.2d 198 (App. Div. 1953), aff'd 15 N.J. 573, 105 A.2d 677 (1954). If the pleadings set forth facts which bring the injury within the coverage of the policy, the insurer is then obligated to defend regardless of the insured's ultimate liability to the complainant. 7C Appleman, Insurance Law and Practice § 4683, at 50 (Berdal ed. 1979). In this regard, it is "the nature of the damage claim, rather than the actual details of the accident or the ultimate liability of the insurer," which determines whether the insurer has a duty to defend. The Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 512, 210 A.2d 221 (1965); Hackensack Water Co. v. General Accident, etc., Ltd., 84 N.J. Super. 479, 482-83, 202 A.2d 706 (App.Div. 1964); Danek, supra.
We begin our analysis with a review of the language contained in the General Liability and Comprehensive Catastrophe Liability policies. Pursuant to the terms of the General Liability Policy, American agreed to pay all sums recovered against the insured "because of bodily injury ... caused by an occurrence...." The General Liability Policy defines "Bodily Injury" as "bodily injury, sickness or disease...." "Occurrence" is defined as "an accident...."
With regard to the Comprehensive Catastrophe Liability Policy, American agreed to pay all sums recovered against the insured "because of personal injury ... caused by or arising out of an occurrence...." "Personal Injury" is defined as "(a) bodily injury, shock, sickness or disease (including death, mental anguish and mental injury resulting therefrom; ... (c) injury arising out of racial or religious discrimination ...; or (d) *464 injury arising out of libel, slander, defamation of character, humiliation...." "Occurrence" is defined as "an accident...."
SL urges upon this court that emotional pain and suffering qualifies as "bodily injury" and "personal injury" under the terms of the policies. We first considered this issue in NPS Corp. v. Insurance Co. of North America, 213 N.J. Super. 547, 517 A.2d 1211 (App.Div. 1986). Citing to a line of cases which recognized that emotional distress is just as real as physical, see Saunderlin v. E.I. DuPont Co., 102 N.J. 402, 414, 508 A.2d 1095 (1986); Portee v. Jaffee, 84 N.J. 88, 417 A.2d 521 (1980); Zahorian v. Russell Fitt Real Estate Agency, 62 N.J. 399, 301 A.2d 754 (1973), we concluded that it would be impossible "to separate a person's nerves and tensions from his body." NPS, supra, 213 N.J. Super. at 553, 517 A.2d 1211. We found that "emotional trauma can be as disabling to the body as a visible physical wound" id., and held that the term "bodily injury" encompassed claims for emotional distress arising from an assault and battery. Id. at 554, 517 A.2d 1211.
We have since revisited the issue in Lumbermen's v. United Serv. Auto., 218 N.J. Super. 492, 528 A.2d 64 (App.Div. 1987) ("Bodily injury" includes mental anguish at least to the extent that the distress alleged does not constitute "parasitic" damages attached to an independent cause of action); Wolfe v. State Farm Ins. Co., 224 N.J. Super. 348, 540 A.2d 871 (App. Div.), certif. denied 111 N.J. 654, 546 A.2d 562 (1988) ("Bodily injury" in automobile policy included claims for emotional distress inflicted by trauma of watching loved one suffer, die or observing failed rescue efforts); and more recently in Voorhees, supra ("Bodily injury" as used in policy, encompasses mental and psychological sequelae arising from the torts of outrage and negligent infliction of emotional distress). Consistent with those authorities, we hold that Whitcomb's claim for mental pain and suffering qualifies as an assertion of bodily and personal injury under the General Liability and Comprehensive Catastrophe policies.
*465 Next we consider SL's argument that Whitcomb's claim for emotional damages constitutes an "occurrence" under each policy. In opposition, American relies on our recent opinion in Atlantic Employers v. Tots & Toddlers, 239 N.J. Super. 276, 571 A.2d 300 (App.Div.), certif. denied 122 N.J. 147, 584 A.2d 218 (1990) for the proposition that damages of whatever nature flowing directly from intentional acts must be considered to be the intended and foreseeable results of such intentional acts, and thus precluded from coverage as an "occurrence". We do not read Atlantic Employers, supra, to so hold.
To the contrary, we there made it clear that unintended results of an intentional act are covered, id. at 281, 571 A.2d 300, and adopted the view that in cases of intentional sexual molestation of children, the law will infer an intent to cause bodily injury and a reasonable expectation of such injury. We see no reason to extend this rule to non-assaultive business behavior merely because it offends public policy.
Each of the policies in this case defines "occurrence" as "an accident ..." It is well settled that the word "accident" as used in an insurance policy connotes an unexpected or unforeseen event. Linden Motor Freight Co., Inc. v. Travelers Ins. Co., 40 N.J. 511, 193 A.2d 217 (1963); John's Cocktail Lounge v. North River Ins. Co., 235 N.J. Super. 536, 541-42, 563 A.2d 473 (App.Div. 1989). It therefore follows that coverage will not be provided for intended results, but will be provided for the unintended and unforeseen results of an intentional act. See Ambassador Insurance Company v. Montes, 76 N.J. 477, 489, 388 A.2d 603 (1978); Atlantic Employers, supra, 239 N.J. Super. at 281, 571 A.2d 300; Lyons v. Hartford Ins. Group, 125 N.J. Super. 239, 310 A.2d 485 (App.Div. 1973), certif. denied 64 N.J. 322, 315 A.2d 411 (1974). Although allegations of improper inducement of early retirement based upon age discrimination may be deemed intentional, resultant emotional distress, when viewed from the standpoint of SL, see Lansco, Inc. v. Dept. of Environmental Protection, 138 N.J. Super. 275, 350 *466 A.2d 520, aff'd 145 N.J. Super. 433, 368 A.2d 363 (App.Div. 1976), certif. denied 73 N.J. 57, 372 A.2d 322 (1977), may well have been neither intended nor expected. Although the trial court did not reach this issue, our careful review of the record discloses no affidavits or discovery materials which would have enabled him to determine whether there was an intentional or anticipated infliction of emotional distress. Absent a definitive showing, or a determination based on factual hearing, such an intent cannot be presumed.
Finally, we address the significance of SL's tardy notice to American of Whitcomb's claim for emotional damages. American was notified of Whitcomb's claim for emotional damages approximately six weeks prior to settlement of his case. This situation, which has been referred to as the "later-revealed facts doctrine," see Great Amer. Ins. Co. v. McKemie, 244 Ga. 84, 259 S.E.2d 39, 40 (1979), requires the insured to notify the insurer of subsequently revealed facts which would bring the case within coverage of the policy. Thus, even though a complaint may lack covered allegations, a duty to defend will be imposed when the insurer "has knowledge of true but unpleaded facts, which, when taken together with the complaint's allegations, indicate that the claim is within or potentially within the policy's coverage." Associated Indem. v. Ins. Co. of North America, 68 Ill. App.3d 807, 25 Ill.Dec. 258, 265, 386 N.E.2d 529, 536 (1979). Although a factual discrepancy exists as to when American received answers to interrogatories and the complete pre-trial order, we find that once American possessed knowledge of Whitcomb's claim for emotional damages, its duty to defend was triggered under the terms of the policies.
In summary, we find that the term "bodily injury" and "personal injury" as used in each of the respective policies encompasses Whitcomb's claim for emotional damages. Such a claim constituted an "occurrence" unless it is established to the satisfaction of the trial judge upon hearing in the declaratory judgment suit, that a bodily injury of that nature was intended. *467 See Burd v. Sussex Mutual Insurance Company, 56 N.J. 383, 394, 399, 267 A.2d 7 (1970). An intention to inflict emotional injury should not be presumed.
The summary judgment entered in favor of American and Kemper is therefore reversed and the matter remanded to the Law Division to make a determination whether or not SL intended or expected to inflict bodily (i.e., emotional) injury upon Whitcomb. If the trial judge finds no such intent or expectation then summary judgment must be entered in favor of SL on the issues of duty to defend and coverage for unintended emotional harm.
However, a determination of duty to cover and defend the emotional injury claim will not resolve the question of allocation as to what portion of the settlement may have been attributed to such injury. If the allocation cannot be resolved by agreement, then on remand, the trial judge must conduct a hearing for the purpose of making such allocation. In so doing, it would be appropriate to consider that neither the Age Discrimination Employment Act nor the Fair Labor Standard Act of 1938 permit the award of compensatory damages for emotional pain and suffering. See Blum v. Witco Chemical Corp., 829 F.2d 367, 376-77 (3rd Cir.1987); Vazquez v. Eastern Air Lines, Inc., 579 F.2d 107 (1st Cir.1978); Rogers v. Exxon Research & Engineering Co., 550 F.2d 834, 841-42 (3rd Cir.1977), cert. denied 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978). The underlying complaint contained two counts asserting federal age discrimination and fair labor claims and a common law count for intentionally fraudulent misrepresentation. To the extent the settlement was based in part on the latter count and to the extent that the emotional injury portion of damages under such count was considered in the settlement, an appropriate allocation of coverage and defense costs for such liability must be made.
Reversed and remanded for proceedings consistent herewith.