256 N.J. Super. 215 (1991)
606 A.2d 879
DIANA H. HAMBSCH, PLAINTIFF,
v.
LOUIS HARRSCH, DEFENDANT/THIRD PARTY PLAINTIFF,
v.
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, THIRD PARTY DEFENDANT.
Superior Court of New Jersey, Law Division Morris County.
Decided November 6, 1991.
*217 Brian J. Levine for the plaintiff (Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, attorneys).
Walter Morris and Allen Hantman for defendant third party plaintiff (Morris & Hantman, attorneys).
Timothy E. Corriston, for third party defendant (Connell, Foley & Geiser, attorneys).
HARPER, JOHN J., J.S.C.
The issue in this matter is whether third party defendant, New Jersey Manufacturers Insurance Company's motion for summary judgment dismissing the third party complaint should be granted. This issue was presented before the court on September 30, 1991, at which time it reserved judgment and advised counsel that further consideration must be given to the arguments presented and the appropriate standard to be employed.
The central issue for the court to consider is whether the standard employed under the Workers' Compensation Act for determining whether an individual intended to cause a particular injury should be applied in interpreting the exclusion contained in a home owner's insurance policy regarding coverage for injuries resulting from an intentional act. The relevant *218 facts and positions of the parties relating to this summary judgment motion are set forth below.
Plaintiff, Diana H. Hambsch and defendant Louis Harrsch were both employees of Warner Lambert Company in Morris Plains, New Jersey. On or about February 23, 1988, while both parties were at work, the defendant, in response to an "annoying tapping noise" made by the plaintiff on her computer screen, discharged an airhorn near the right side of the plaintiff's face. The air horn was issued by Warner Lambert to be used to summon persons in case of an emergency. Plaintiff claims that as a result of the defendant's discharging of the air horn, she has suffered a physical injury to her right ear.
A complaint was filed against the defendant on or about April 6, 1988, which specifically set forth the plaintiff's allegations claiming that the defendant caused the air horn to strike the right side of the plaintiff's face with the intent to frighten, harass and annoy the plaintiff and with the intent to cause the plaintiff serious bodily harm.
Although this incident occurred at the work place and would normally be covered under the Workers' Compensation Act, the plaintiff chose to avoid the "fellow-servant rule" and the damages limitation of the Act by asserting that her claim fell within an exception to this Act. Specifically stated the exception contained in N.J.S.A. 34:15-8 reads, in pertinent part:
If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed except for intentional wrong.

N.J.S.A. 34:15-8 (emphasis added). Accordingly, the plaintiff opted to establish that the defendant's acts amounted to an intentional wrong and fell outside the damages limitation of the Workers' Compensation Act so that she, plaintiff, could sue the defendant, a co-employee, for money damages.
On December 13, 1988, the defendant filed a third party complaint against New Jersey Manufacturers Insurance Company (hereinafter referred to sometimes as N.J.M.) in the *219 instant action. The defendant alleged that, under his Homeowner's Policy, he should be indemnified by N.J.M. against the allegations presented by the plaintiff in her complaint. N.J.M. denied liability to defendant, its insured, claiming that there is no insurance coverage for losses resulting from an intentional act. Thereafter, a trial was held from July 29, 1991 through August 1, 1991 before this court.
During the trial, the court submitted interrogatories to the jury and asked them to determine whether the "defendant, Louis Harrsch, intend[ed] with substantial certainty to harass, annoy and physically injure plaintiff Diana H. Hambsch?" The jury was instructed that "for purposes of this question `substantial certainty' is defined as the standard greater than both mere knowledge and appreciation of risk and greater than the strong probability of a risk which a person in defendant's circumstance would have or should have known. However, it is a lesser standard than an absolute certainty." In accordance with these instructions and after hearing testimony and extensive argument from the parties, the jury found that the defendant intended with substantial certainty to harass, annoy and physically injure the plaintiff. Following this, the jury returned a verdict for the plaintiff in the amount of $28,500.00, together with $6,775.00 in interest, for a total of $35,275.00.
Since the trial, the defendant has looked to his insurance carrier to indemnify him against this judgment. In light of the jury's determination that the defendant intended with substantial certainty to injure the plaintiff, N.J.M. refuses to indemnify its insured due to a provision in its policy which excludes coverage for bodily injury "which is expected or intended by the insured." (emphasis added) This exclusion in the defendant's policy is the basis for N.J.M.'s motion for summary judgment seeking to dismiss the third party complaint for indemnification.
It is the position of both the plaintiff and the defendant that a jury finding that "a person in defendant's circumstances" *220 had intended with substantial certainty to injure the plaintiff (the language from applicable case law dealing with the Workers' Compensation Act exception) does not automatically amount to an "expected or intended act" as those words are used in N.J.M.'s home owners insurance policy. According to the plaintiff and the defendant, a purely subjective standard applies when determining an individual's intent for purposes of potential insurance coverage and thus, summary judgment should be denied and the issue of defendant's intent should be submitted to the jury based on the subjective standard. Since this is a case of first impression, an analysis of the Workers' Compensation Act exception dealing with intentional acts and of insurance policy coverage exclusions for intentional wrongs is necessary to determine whether an intentional wrong which is actionable in this court should be covered by N.J.M.'s homeowner's insurance policy.
The intentional wrong exception to the Workers' Compensation Act has been the subject of various cases which have tried to divine the Legislature's intent. In Bryan, et al v. Jeffers, et al, 103 N.J. Super. 522, 523-24, 248 A.2d 129 (App.Div. 1968) cert. denied, 53 N.J. 581, 252 A.2d 157 (1969), the Appellate Division believed that "the legislature intended the words `intentional wrong,' in this context, to have their commonly understood signification of deliberate intention", and did not equate this intentional wrong with gross negligence or constructive intent. Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 170, 501 A.2d 505 (1985).
In Millison, the New Jersey Supreme Court reflected upon cases such as Bryan and its progeny when it discussed the very narrow and limited nature of the intentional wrong exception. See, e.g., Arcell v. Ashland Chemical Co., 152 N.J. Super. 471, 495-96, 378 A.2d 53 (1977) (the intentional wrong standard was not satisfied by allegations of an employer's willful and wanton failure to adopt known health and safety procedures for the sake of employees); Copeland v. Johns-Manville Products Corp., 492 F. Supp. 498 (D.N.J. 1980) (the standard for intentional *221 wrong was not met by showing that an employer was aware of hazardous working conditions, maliciously exposed his employees to such conditions and intentionally withheld information regarding the health risks involved). Additionally, the court in Millison relied upon Professor Larson's treatise on workers' compensation law, which emphasized the limited application of the intentional wrong exception as follows:
Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, willfully failing to furnish a safe place to work, or even willfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.
2A A. Larson, The Law of Workmens' Compensation, Section 68.13 at 13-22 to 13-26 (1984). (footnotes omitted).
Against this background of caselaw, the Millison court concluded that an injured employee must prove that the defendant's actions were "substantially certain" to cause the injury suffered before this exception will serve to avoid the limits of the Workers' Compensation Act. The plaintiff in Millison was unable to satisfy this narrow "substantial certainty" test and thus, there were no damages awarded beyond those available under the Workers' Compensation Act.
The "rigid consistency" of the intentional wrong exception was best described in Millison in the following manner:
although different jurisdictions may craft different formulations, whatever formulation is used represents a conscious effort to impose severe restrictions on the exception, bringing it as close to "subjective desire to injure" as the nuances of language will permit, while at the same time recognizing the problems of proof inherent in any attempt to demonstrate subjective intent.

Millison, 101 N.J. at 173, 501 A.2d 505 (emphasis added). Moreover, the Millison dissent took the harsh application of the exception even further by stating that the effect of the majority's decision was "virtually akin to a showing of subjective intent or actual purpose to inflict injury." Millison, at 190, 501 A.2d 505 (emphasis added).
Interestingly, the Appellate Division in Bustamante v. Tuliano, 248 N.J. Super. 492, 591 A.2d 694 (App.Div. 1991) subtlely *222 shed some light on the dilemma surrounding whether the Millison majority's "substantial certainty" standard amounted to an actual "subjective intent" to cause injury as the Millison minority opined. In Bustamante, the court considered whether a co-worker's personal injury complaint should be barred under the exclusive remedy provisions of the Workers' Compensation Act. In addressing this issue, the court analyzed the substantial certainty test advanced in Millison and concluded that the Workers' Compensation bar "will fall only in the face of proof of a subjective intent to injure or a substantial certainty that injury will occur." Bustamante, 248 N.J. Super. at 501, 591 A.2d 694 (emphasis added). Thus, the Appellate Division in Bustamante clearly distinguished the substantial certainty test from a subjective intent to injure and expressly says that they are not one in the same but, in fact, are two distinct and separate standards.
Although it may be difficult to establish an individual's intent to injure, for purposes of the intentional act exception to the Workers' Compensation Statute, Millison and its offspring have skillfully devised a standard based upon either a "substantial certainty" to injure or the defendant's actual subjective intent to injure. After receiving jury instructions based solely upon the substantial certainty standard, the jury in the instant case found the language of the narrow and limited intentional wrong exception did apply to describe the defendant's conduct and damages were awarded outside the limits of the Workers' Compensation Act.
In light of the jury's findings, the question remains as to whether such conduct is covered under N.J.M.'s insurance policy. Public policy dictates that insurance indemnity should be denied for the civil consequences of an insured's own intentional wrongdoing. Lyons v. Hartford Insurance Group, 125 N.J. Super. 239, 244-45, 310 A.2d 485 (App.Div. 1973) cert. denied, 64 N.J. 322, 315 A.2d 411 (1974). See also Malanga v. Manufacturers Casualty Insurance Co., 28 N.J. 220, 225, 146 *223 A.2d 105 (1958); Ruvolo v. American Casualty Co., 39 N.J. 490, 496, 189 A.2d 204 (1963). The homeowner's policy in the case sub judice includes a basic exclusionary clause providing that "medical payments to others do not apply to bodily injury or property damage which is expected or intended by the insured." To understand the applicable standard for determining what was expected or intended by the insured, a discussion of the caselaw in this area is necessary.
In SL Industries v. American Motorists, 248 N.J. Super. 458, 591 A.2d 677 (App.Div. 1991), the Appellate Division addressed whether the allegations contained in an age discrimination complaint comport with the definition of bodily injury or property damage as defined by the plaintiff's general liability policy and a comprehensive catastrophe liability policy. The defendant, American Motorists Insurance Company, agreed to pay all monies recovered against its insured, SL Industries, "because of personal injury ... caused by or arising out of an occurrence...". SL Industries, 248 N.J. Super. at 463, 591 A.2d 677.
SL Industries looked to American Motorists for coverage after it settled age discrimination, fair labor and fraudulent misrepresentation claims brought by one of its employees. American Motorists denied any coverage to SL Industries because it believed that the allegations made by the employee were not within the definition of bodily injury or property damage provided for in the policy.
In determining whether the insurance company's motion for summary judgment should be granted, the court first held that the employee's claim for mental pain amounted to an assertion of personal injury as described under SL Industries' general liability and comprehensive catastrophe policies. From there, the court considered whether the employee's claim for emotional damages is an "occurrence" as defined by each policy. This consideration was determined based upon the theory that "coverage will not be provided for intended results, but will be provided for the unintended and unforeseen results of an intentional *224 act." SL Industries, 248 N.J. Super. at 465, 591 A.2d 677. See also Ambassador Insurance Co. v. Montes, 76 N.J. 477, 489, 388 A.2d 603 (1978); Atlantic Employers v. Tots & Toddlers, 239 N.J. Super. 276, 281, 571 A.2d 300 (App.Div. 1990). Since there had been no definite showing during the trial that SL Industries intended to or anticipated a inflict emotional harm upon its employee, the Appellate Division remanded the case for the trial court to determine whether SL Industries intended the results of its acts.
The standard for determining the extent of insurance policy coverage for an insured's alleged intentional acts, as discussed in such cases as Lyons and SL Industries, was honed even finer in Allstate Insurance Co. v. Schmitt, 238 N.J. Super. 619, 570 A.2d 488 (App.Div. 1990). In Schmitt, the facts revealed that Schmitt, the defendant in the declaratory judgment action, had been struck in the face with a glass by Scalera and, thus Scalera was charged with aggravated assault. Subsequently, Schmitt filed a civil complaint against Scalera for compensatory damages. Scalera notified Allstate Insurance Company seeking coverage under his mother's homeowners policy. Allstate assumed the position that it was under no obligation to indemnify Scalera for damages resulting from his criminal acts, and such an insurance policy exclusion is grounded in public policy which precludes coverage for injuries intended by the insured.
Initially, the court considered Schmitt's contention that "the policy exclusion is confined to instances where the insured intentionally injures his victim and subjectively desires to cause the type of harm actually inflicted." Schmitt at 623, 570 A.2d 488 (emphasis added). However, the Schmitt court refused to construe the policy language as narrowly as Schmitt proposed. To support his argument, Schmitt relied heavily on the holdings in Ambassador Insurance Company v. Montes, 76 N.J. 477, 388 A.2d 603 (1978) and Lyons v. Hartford Insurance Group, 125 N.J. Super. 239, 310 A.2d 485 (App.Div. 1973). However, the Schmitt court found that the policy exclusions involved in *225 Ambassador and Lyons were readily distinguishable from the policy exclusions in the case before it.
In Ambassador, the Schmitt court found, the majority's holding did not even address the question of whether the insurance policy language barred coverage for the unintended results of an insured's intentional acts. Moreover, the exclusionary clause in Ambassador is entirely unlike the one presented in Schmitt. Thus, the Schmitt court found the discussion in Ambassador basically irrelevant to the question before it.
In Lyons, the insurance policy language to be construed involved "bodily injury which is either expected or intended from the standpoint of the insured." Lyons at 244, 310 A.2d 485. (emphasis added) The Schmitt court opined that the Lyons policy language connotes a "subjective element" premised upon the insured's subjective intent to injure another. However, the insurance policy in Schmitt was found to be "thoroughly distinct" from the one presented in Lyons. Schmitt, 238 N.J. Super. at 626, 570 A.2d 488. Specifically distinguishable was the absence of the Lyons policy language of "intended" and "from the standpoint of the insured" from the Schmitt policy. Without these key words, the Schmitt court reasoned that the policy exclusion before it was not altogether predicated upon a subjective intent to cause harm to another.
More specifically, the Schmitt, policy exclusion required a harm "which may reasonably be expected to result from the intentional ... acts of the insured person or which is in fact intended by an insured person ... [The court] rejected the contention that these phrases add a subjective element to the exclusion and require a conscious desire to inflict injury upon another." Schmitt at 626, 570 A.2d 488. (emphasis added) The court drew this conclusion by treating the Schmitt policy exclusion as two disjunctive phrases connected by the word "or". Accordingly, the court determined that the latter phrase, *226 ("or which [was] in fact intended"), required a subjective desire to injure while the phrase appearing before the "or", ("which may reasonably be expected to result ..."), required something less than a pure subjective intent to cause bodily harm. To read this insurance policy exclusion clause otherwise would be wholly redundant the court opined. Thus, since Lyons was based strictly on a subjective intent policy exclusion and Schmitt involved language which connotes a less than purely subjective intent to injure, this court found that the Lyons case is distinguishable and thus inapplicable to the specific facts in Schmitt. Based on these determinations, the court in Schmitt found the insurance policy exclusion applicable to Scalera's acts, which were found to intend the harm caused based upon the less than subjective intent standard contained in the coverage exclusion under Scalera's mother's homeowners policy.
Against this legal background, the facts of the case at bar require the court to draw from both workers' compensation exception cases and insurance policy coverage decisions to determine whether one standard may be employed when considering an individual's intent and its legal consequences in both situations. The cases analyzing the workers' compensation intentional wrong exception are extremely rigorous in their interpretation of the exception and require something "... as close to subjective desire to injure as the nuances of language will permit..." Millison, 101 N.J. at 173, 501 A.2d 505. Moreover, the insurance policy coverage exclusion for injuries expected or intended by the insured must be carefully read before assuming that a pure subjective standard is appropriate. As the Schmitt court held, the language of the policy must be carefully construed to determine whether a purely subjective desire to harm is required.
The policy language at issue in the case at bar excludes coverage for bodily harm "which is expected or intended by the insured." The policy language in Lyons excluded coverage with respect to "bodily injury which is either expected or *227 intended from the standpoint of the insured." Schmitt, 238 N.J. Super. at 625, 570 A.2d 488 (emphasis added). As previously discussed in more detail, the Schmitt court found the language in Lyons to be premised upon a subjective intent to cause bodily harm to another. Given the almost identical language of the Lyons policy to the policy involved in the instant case, the Schmitt, analysis supports the conclusion in the case at bar that defendant Harrsch's insurance policy exclusion also requires a purely subjective intent to harm.
The jury that decided whether defendant Harrsch's acts were intentional for purposes of assessing liability was given instructions reflecting an objective intent standard based upon what "a person in defendant's circumstances would have or should have known". While this less than subjective "substantial certainty" test is an appropriate jury instruction for purposes of deciding liability, it would not be an appropriate jury charge for determining an insured's purely subjective intent to cause the harm sufficient to implicate an exclusion from coverage under a homeowner's insurance policy.
Accordingly, a new jury must be instructed to determine whether defendant Harrsch had the requisite subjective intent to cause bodily injury which would preclude indemnification from his insurance company for all damages awarded against him. Therefore, the third party defendant's motion for summary judgment is denied so that a jury may determine whether the policy exclusion is applicable to defendant Harrsch's actions.