287 N.J. Super. 190 (1995)
670 A.2d 1071
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THE JOSEPH OAT CORPORATION, FORMERLY KNOWN AS JOSEPH OAT AND SONS, INC., MARTIN KAPLAN, RONALD KAPLAN, MAURICE HOLTZ AND MICHAEL HOLTZ, DEFENDANTS-APPELLANTS, AND SHARON HALE-JENKINS, MONICA JENKINS, VALORIE R. SMITH, GREGORY A. SMITH, MAURICE R. SMITH, JR., AND VALORIE D. SMITH, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 1995.
Decided March 20, 1995.
*191 Before Judges PRESSLER, LANDAU and CONLEY.
J. Llewellyn Mathews argued the cause for appellants (Blank, Rome, Comisky & McCauley, attorneys; Stephen M. Orlofsky, New Jersey Resident Partner, on the brief).
Michael J. Marone argued the cause for respondent (McElroy, Deutsch & Mulvaney, attorneys; William T. McElroy and Mr. Marone, of counsel and on the brief).
The Opinion of the Court was delivered by CONLEY, J.A.D.
*192 This Worker's Compensation and Employer's Liability insurance coverage appeal arises from the tragic deaths of two employees of defendant insured Joseph Oat Corporation (Oat). Pursuant to the Worker's Compensation and Employer's Liability policy issued to Oat, plaintiff insurer immediately assumed the defense of and coverage for worker's compensation dependency death benefits and funeral expenses. Almost two years later, two separate common law tort suits were filed in the Superior Court. It is conceded that the allegations of those complaints are couched in language designed to survive the exclusivity of the Workers' Compensation Act by alleging conduct rising to the level of "intentional wrong." See N.J.S.A. 34:15-8.[1] Indeed, the complaints did survive a motion for summary judgment. But because the complaints must allege conduct that amounts to "intentional wrong" in order to escape the bar of N.J.S.A. 34:15-8, the exclusionary provision for "bodily injury intentionally caused" in the insurance policy was triggered. Thus, when Oat requested a defense of the suits, plaintiff declined and disclaimed coverage. It then filed this declaratory judgment action. On plaintiff's motion for summary judgment, the trial judge agreed that the exclusion applied.
We affirm. In doing so, we observe that we are not here dealing with a general liability insurance policy and with the issue of when conduct, which may be considered intentional, nonetheless results in an accidental injury and thus would be subject to coverage under such a policy. See SL Industries, Inc. v. American Motorists Ins. Co., 128 N.J. 188, 212, 607 A.2d 1266 (1992). The viability of the underlying common law actions, by virtue of *193 N.J.S.A. 34:15-8, requires conduct amounting to an intentional wrong within the meaning of worker's compensation law. We are not, then, here called upon to ascertain whether the employer's conduct can nonetheless be considered accidental, as was the issue in SL. If the allegations of the complaints do not rise to the level of intentional wrongs, then there is no viable common law action but the plaintiffs in the underlying action would, of course, retain their recourse to workers' compensation benefits.
The policy is divided into two parts. Part one covers worker's compensation benefits. Part two provides the employer liability coverage. That coverage, however, is limited. As to what the insurer will pay under part two, section B provides:
We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered in this Employers Liability Insurance.
Section C captioned "Exclusions," provides in pertinent part:
"This insurance does not cover: ... 4. any obligations imposed by a worker's compensation ... law ... 5. bodily injury intentionally caused ... by you...."
The duty to defend contained in part two is commensurate with coverage. Section D provides in part:
We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance ... we have no duty to defend a claim, proceeding or suit that is not covered by this insurance.[2]
Concededly, the scope of the coverage that is purchased by an employer under part two, is substantially reduced by these exclusions.[3] There are, however, no ambiguities in these exclusions. We have, moreover, previously observed that there are certain *194 common law claims that would be subject to employer liability coverage. See Central Nat. Ins. Co. v. Utica Nat. Ins. Group, 232 N.J. Super. 467, 471-72, 557 A.2d 693 (App.Div. 1989).
The thrust of defendants' contention here is their assertion that in denying the motions for summary judgment in the underlying complaints, the motion judge construed Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 501 A.2d 505 (1985) as providing, within the "intentional wrong" statutory exception to workers' compensation exclusivity, either a cause of action based upon subjective intent to cause injury or, alternatively, a cause of action based upon intentional conduct with a substantial certainty that injury would occur.[4] According to defendants, the motion judge *195 viewed these as separate, but viable, common law causes of action. Only if the first, i.e. subjective intent to harm, were involved would the insurance exclusion apply. It is conceded the complaints do not allege subjective intent. But defendants claim that the complaints assert the second, alternative type conduct which is not covered by the exclusion because it does not rise to the level of the type of deliberate intent that is excluded.
Regardless of how the motion judge may have read Millison, we think it plain that only one type of intent is sufficient to escape the exclusivity of the Workers' Compensation Act and reject the contention that the Supreme Court adopted something less as an alternative viable cause of action. Plaintiffs in Millison had alleged in count one that their employer had intentionally exposed them to the hazards of asbestos and deliberately concealed the risks of exposure to asbestos, and in count two had fraudulently concealed their knowledge that plaintiffs had contracted asbestosis.[5] In determining "whether the legislature intended that the Compensation Act should serve as a worker's sole and exclusive remedy under circumstances such as those alleged," id. at 169, 501 A.2d 505, the Court recognized that the Workers' Compensation Act "contemplates that as many work-related disability claims as possible be processed exclusively within the Act," id. at 177, 501 A.2d 505, and the narrowness of the scope of the intentional wrong exception, id. at 170-173, 501 A.2d 505. It observed that "to satisfy the Compensation Act's definition of `intentional wrong,' claimants have heretofore been required to show a deliberate intention to injure." Id. at 170, 501 A.2d 505 (emphasis added), *196 citing Bryan v. Jeffers, 103 N.J. Super. 522, 523-24, 248 A.2d 129 (App.Div. 1968), certif. denied, 53 N.J. 581, 252 A.2d 157 (1969) ("intentional wrong" means "deliberate intention," not gross negligence or other concepts involving constructive intent); Arcell v. Ashland Chem. Co., 152 N.J. Super. 471, 495-96, 378 A.2d 53 (Law Div. 1977) (intentional wrong standard not satisfied by allegations of "wanton and wilful" misconduct); Copeland v. Johns-Manville Prods. Corp., 492 F. Supp. 498 (D.N.J. 1980) (same); Petruska v. Johns-Manville, 83 F.R.D. 39 (E.D.Pa. 1979) (Compensation Act's strict definition of intentional wrong requires deliberate intent to injure).
Critical to this appeal, when the Court considered the "essential question" as to "what level of risk-exposure is so egregious as to constitute an `intentional wrong,'" Justice Clifford writing for the majority declined to adopt a standard short of deliberate intent to injure:
In light of the legislative inclusion of occupational diseases within the coverage of the Compensation Act, however, the dividing line between negligent or reckless conduct on the one hand and intentional wrong on the other must be drawn with caution, as to that the statutory framework of the Act is not circumvented simply because a known risk later blossoms into reality. We must demand a virtual certainty. See Blankenship [v. Cincinnati Milacron Chemicals, Inc., supra, 69 Ohio St.2d 608, 433 N.E.2d 572, 581 (1982)] (Locker, J., concurring); cf. Restatement 2d of Torts § 500, comment (f), differentiating reckless misconduct from intentional wrongdoing ("strong probability" is a different thing from the substantial certainty without which an actor cannot be said to intend the harm that his act produces). It may help to perceive "substantial certainty" not so much as a substantive test itself nor as a substitute for a subjective desire to injure, [but] as a specie of evidence that will satisfy the requirement of cases such as Bryan v. Jeffers, supra, 103 N.J. Super. at 523-24 [248 A.2d 129], that "deliberate intention" be shown. Contrary to the dissent's suggestion, post at 192 n. 1, we do not, by today's decision, repudiate earlier decisions in this area represented by Bryan and Arcell v. Ashland Chem. Co., supra, 152 N.J. Super. [471, 495-96, 378 A.2d 53 (1977)]; rather, we see our determination as a logical development in this sensitive field of the law.
[Id. at 178 (emphasis added)].
Thus, the Supreme Court did not depart from Bryan v. Jeffers, supra, 103 N.J. Super. at 523-524, 248 A.2d 129, which defined the statutory phrase "intentional wrong" as requiring a claimant "to show a deliberate intention to injure." Rather, it did no more *197 than explain that such deliberate intent to injure can be proved not only by evidence of actual subjective intent to injure, but also by circumstances where injury is a substantial or virtual certainty, i.e., facts "without which an actor cannot be said to intend the harm that his act produces." Millison, supra, 101 N.J. at 178, 501 A.2d 505.
There are not, then, two discrete categories of conduct which will satisfy the requirement of an "intentional wrong" to escape the exclusivity of workers' compensation remedies. Both subjective intent and substantial certainty of harm are expressive of the same standard, i.e. deliberate intent to harm. The "proof of the pudding", so to speak is in the fact that Millison held that count one, which alleges no more than what defendants claim here as the alternative basis for "intentional wrong," was insufficient to escape the bar. And see Bustamante v. Tuliano, 248 N.J. Super. 492, 498-99, 591 A.2d 694 (App.Div.), certif. denied, 126 N.J. 385, 599 A.2d 162 (1981). To the extent that Hambsch v. Harrsch, 256 N.J. Super. 215, 222, 606 A.2d 879 (Law Div. 1991) expresses a different view, it is disapproved.[6]
We briefly comment on defendant's additional contention that, relying upon Griggs v. Bertram, 88 N.J. 347, 443 A.2d 163 (1982), plaintiff is estopped from denying coverage under part two, essentially because it early on assumed its obligations under part one. The deaths here facially appeared to be accidents, even if caused by some negligence or workplace safety violations by the employer. Plaintiff clearly was obligated to assume the worker's compensation defense and coverage. But, unlike the circumstances in Griggs, here we can not say it was reasonably on notice of the potential for a common law claim until the filing of the *198 complaints. At that point, it timely notified defendant Oat of its intent to disclaim coverage and declined to defend the complaint.
Affirmed.
NOTES
[1] N.J.S.A. 34:15-8 provides:

If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong. [Emphasis added].
[2] Plaintiff argues that this language provides for a more narrow defense obligation than construed in Danek v. Hommer, 28 N.J. Super. 68, 78, 100 A.2d 198 (App.Div. 1953), aff'd o.b., 15 N.J. 573, 105 A.2d 677 (1954) and that it no longer need defend even where the allegations of a complaint trigger coverage but are "groundless, false and fraudulent." We need not resolve this issue because the allegations of the complaints, in order to survive summary judgment, assert conduct that is excluded from coverage.
[3] We have not been provided with the components of the premium paid by the employer. We were told, however, during oral argument that the premium is unallocated and primarily based upon the worker's compensation coverage required under part one.

To the extent defendants contend that the exclusionary provisions are inconsistent with public policy and that the Legislature has required "seamless" coverage in this area, we reject that as without any legal support and certainly without statutory basis. Defendants references to the Workers' Compensation Act simply do not concern exclusionary provisions for employer liability policies.
[4] That ruling is not before us. But we note that the allegations in the underlying complaints closely parallel the allegations in count one of the complaint before the court in Millison and which the court concluded did not assert a viable common law cause of action. It was count two that was found to allege an intentional wrong by alleging intentionally concealing from the employees the fact that they had asbestosis with aggravation thereof arising from their continued exposure virtually certain to occur  conduct that was far more than simply failing to warn of dangerous conditions or intentionally exposing workers to the risk of harm. The court noted:

There is a difference between, on the one hand, tolerating in the workplace conditions that will result in a certain number of injuries or illnesses, and, on the other, actively misleading the employees who have already fallen victim to those risks of the workplace. An employer's fraudulent concealment of diseases already developed is not one of the risks an employee should have to assume. Such intentionally-deceitful action goes beyond the bargain struck by the Compensation Act.
[101 N.J. at 182, 501 A.2d 505].
Although we express no view as to whether the motions were properly denied, defendant Oat might consider moving for a reconsideration. If the prior ruling was wrong, we see no "law of the case" impediment to such a reconsideration. See Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 531 A.2d 1078 (App.Div. 1987), certif. denied, 110 N.J. 196, 540 A.2d 189 (1988).
[5] Although we need not recite them here the allegations in the underlying complaints are similar to these asserted in count one in Millison. We again note, in this respect, that count one in Millison was held not to allege a course of action that survived the exclusivity of the Worker's Compensation Act.
[6] We express no view as to the holding in Hambsch that a jury verdict of intentional wrong under the Workers' Compensation Act did not resolve the coverage issue. We simply note that the coverage issue there did not involve an employer liability policy or the exclusionary language at issue here. The policy at issue was a homeowners' policy with an exclusion for bodily harm that is "expected or intended by the insured."